NORMALI, APPELLANT, *v.* CLEVELAND ASSN. OF
LIFE UNDERWRITERS, APPELLEE.

(No. 32610—Decided February 7, 1974.)

*Messrs. Weisman, Goldberg & Weisman,* for appellant.
*Messrs. Hollingsworth & Hollingsworth,* for appellee.

JACKSON, J. Plaintiff-appellant Frank Normali became a member of the Cleveland Association of Life Underwriters, hereinafter referred to as defendant-appellee, or C. A. L. U., in April 1962. The organization is a voluntary professional association of insurance agents. Plaintiff was a member in good standing when in 1970, he appeared on various local radio talk shows to discuss the insurance industry. During his participation on these shows, according to the record, he stated: (1) Term life insurance is far superior to cash value insurance; (2) Any agent who sells cash value insurance does so because he is stupid, or because he makes a larger profit on cash value insurance; (3) He is embarrassed by the large number of dishonest insurance agents.

The C. A. L. U. received numerous complaints from members regarding the views expressed by plaintiff Normali. After plaintiff appeared on the Pete Franklin Show on December 8, 1970, a three-man investigating committee was appointed by defendant C. A. L. U. to listen to the tapes of the show and recommend whether a formal hearing should be held. Such a hearing was recommended and scheduled for February 9, 1971, for plaintiff and his business associate, Woodworth. Because of a heavy snow, neither plaintiff Normali nor Woodworth could be present. Their attorney requested a postponement which was granted to Woodworth, but the hearing was held on plaintiff in his absence, allegedly because the defendant appellee was not aware that said attorney also represented plaintiff appellant.

Pursuant to the by-laws of the C. A. L. U. a vote of two-thirds of the seventeen members of its Board of Directors or twelve votes, are required to find appellant guilty of conduct unbecoming a member; a second vote of at least twelve members is also required to determine punishment. The minutes of the February 9, 1971, meeting, and defendant's answer to plaintiff's interrogatory number 9 indicate that only twelve members of the C. A. L. U. were present at the February 9, 1971, meeting. Hadsell Eaton, one of the twelve members listed as present, testified that he did not vote. He also testified that another member, Mark B. Ianni,

whose name was not included in defendant's response to said interrogatory, arrived late and voted. Mr. Ianni also testified that he was present and voted. The plaintiff appellant was found guilty by the Board of conduct unbecoming a member and expelled.

One week later on February 16, 1971, a hearing was held by defendant C. A. L. U. for Woodworth. Plaintiff appeared as a witness for his business associate, Woodworth, and, after testifying, requested reconsideration of his own case.

Appellant was asked:

"Now, would you like to make a suggestion to the Board that if you were given the opportunity, you know, of another hearing, that there would be other and quite different kind of defense material that you would like to put before the Board?"

Appellant responded:

"No, I wouldn't have different witnesses, and they won't be in a different tenor. But just for clarification of the record, I would like the excerpts played for the Board of the things that they have said that I have said."

The appellant then asked:

"Would you play the tapes in front of the meeting? Because they have been misquoted. That's all."

The Board agreed to this request and did play the tapes before the Board in the presence of appellant.

After reconsideration, the Board voted to affirm its prior votes of February 9, 1971. The plaintiff filed a mandatory injunction action in Common Pleas Court requesting reinstatement as an active member of the Association, and that his explusion be ordered stricken from the record as unlawful. Judgment was entered for the defendant. Plaintiff appeals and assigns two errors:

1. The Court of Common Pleas for Cuyahoga County erred in overruling the Motion of the plaintiff for final judgment at the close of his case, and at the close of defendant's case.

2. The Conclusion of Law of the Court of Common Pleas for Cuyahoga County which reads as follows:

"The Court finds no lack of due process of law and/

or natural justice in the proceedings taken by defendant organization against the plaintiff is against the manifest weight of the evidence and contrary to law.''

Both assignments of error raise the issue: Did the defendant appellee comply with the requirements of due process which apply to proceedings for the expulsion of a member from a private association?

''. . . [A] private organization, particularly if tinged with public stature or purpose, may not expel or discipline a member adversely affecting substantial property, contract or economic rights, except as a result of fair proceedings which may be provided for in organization bylaws, carried forward in atmosphere of good faith and fair play.'' *McCune* v. *Wilson* (1970, Fla.), 237 So. 2d 169.

A member of a private association may not be expelled without due process. This right is derived not from the Constitution but rather from a theory of ''Natural Justice.'' *Milkie* v. *Academy of Medicine* (1969), 18 Ohio App. 2d 44. Due process in this respect is comprised of three basic elements: (1) absence of bad faith, (2) compliance with the constitution and by-laws of the association, and (3) natural justice. Since there has been no allegation or showing of bad faith, the following discourse will be limited to the second and third elements.

The appellant argues that he was denied due process because the three-man investigating committee considered only the inculpatory evidence against him. The National Association of Life Underwriters (N. A. L. U.) with which defendant (C. A. L. U.) is affiliated, has published a booklet titled, *Keep it Legal,* containing guidelines for expulsion proceedings. One of the guidelines requires consideration by the investigating committee of all evidence, inculpatory as well as exculpatory. The booklet, however, is not part of the defendant association's by-laws, so failure to comply with guidelines enunciated therein does not constitute a denial of due process on this ground. Neither is it a denial of due process on the theory of natural justice. The investigating committee was not empowered to expel the appellant but merely to make a recommendation to the association. The role of the investigating committee may be

analogized to that of a grand jury where the accused is not permitted to introduce exculpatory evidence. Natural justice requirements of due process are not violated when such an investigating committee hears only inculpatory evidence.

The next and most serious complaint alleged by appellant is that he was expelled without the required vote of two-thirds of the seventeen-member Board of Directors. In contrast to the guidelines of *Keep it Legal*, the two-thirds vote requirement is mandated by the by-laws of the C. A. L. U., and consequently, must be strictly followed.

At the time of plaintiff's expulsion defendant's Board of Directors consisted of sixteen members, although a seventeen-member Board was required by defendant's constitution. Due process requires that an association follow the provisions of its own constitution in expelling a member. Therefore, two-thirds of seventeen, or twelve votes were required to expel the plaintiff appellant. Defendant's argument that a vote of only two-thirds of sixteen or eleven Board members were necessary for expulsion is rejected.

Plaintiff contends that C. A. L. U. is bound by its response to plaintiff's interrogatory number 9 in which defendant C. A. L. U. listed only twelve members of its Board of Directors as present at the February 9, 1971, hearing when the vote was taken expelling plaintiff appellant. Since Hadsell Eaton, one of the twelve members listed as present, testified that he did not participate in the voting at said hearing, there could have been only eleven votes cast to expel, which is insufficient to remove a member. At trial, defendant moved to correct the answer to interrogatory number 9 to show the attendance of Mark Ianni, who testified that he was actually present and did vote at the February 9, 1971, hearing. Plaintiff contends that the trial court erred in permitting the defendant to rebut its response to interrogatory number 9.

The plaintiff's position is supported by *Saum* v. *Venick* (Montgomery Cty., 1972), 33 Ohio App. 2d 11, which holds that:

"Answers to interrogatories submitted and introduced into evidence pursuant to Civ. R. 33 are as binding as jud-

icial admissions, and the allowance of testimony at trial on behalf of the party submitting the answers which rebuts statements in such answers prejudices the rights of the party propounding the interrogatories." (Syllabus)

Defendant counters plaintiff's argument by citing Civ. R. 26(E)(2) which is claimed to provide the authority and a responsibility to correct incorrect information provided through the process of discovery. The pertinent portion of this rule states:

"(E) *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) * * *

(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response."

Defendant first moved to correct the allegedly incorrect response to this interrogatory at trial after almost all the testimony was given. Rule 26(E)(2) places a duty on a party to *seasonably* correct an incorrect response. In view of the fact that the trial was almost over, the court below did not err in denying defendant's tardy motion to correct the response to this interrogatory.

Nor did the trial court err in receiving testimony from defendant's witness, Mr. Ianni, which rebutted defendant's response to this interrogatory. The Civil Rules could not bind a court of law to accept as true an incorrect response to a discovery request. The Civil Rules are designed and should be construed as an aid and not an impediment in the search for truth. Civ. R. 1(B). Accordingly, the trial court correctly permitted the defendant to offer evidence at trial to rebut the original, allegedly incorrect, response to interrogatory number 9. In so holding we note the conflict with *Saum* v. *Venick, supra.*

The plaintiff also contends that the February 9, 1971, ruling by the panel is void because he was told at the February 16th hearing that the decision would be "laid aside" and that the Board would "decide it over again." The

record discloses that the Board did not take two votes but only voted once—to affirm the earlier votes. The appellant argues that the February 9th votes were nullities because (1) the plaintiff was not present, (2) twelve guilty votes were not cast, and (3) the board agreed to reconsider. If the February 9th votes were completely void, said votes could not be affirmed subsequently.

The defendant responds that appellant was not entitled to a perfect hearing, but only an essentially fair hearing procedure. The plaintiff had notice of the charges and an opportunity to appear and defend. He was voted guilty and expelled on February 9th. These two votes were affirmed after plaintiff did in fact appear at the hearing on February 16th, after the evidence which he asked to be reconsidered was in fact reviewed in his presence by the Board. Consequently, there was compliance with the requirements of notice and opportunity to be heard.

We find, therefore, that plaintiff appellant was afforded the essentials of due process in the proceedings resulting in his expulsion from defendant C. A. L. U. Accordingly, the decision of the lower court is affirmed.

*Judgment affirmed.*

MANOS, C. J., and DAY, J., concur.