PUTKA, Appellant,

v.

**FIRST CATHOLIC SLOVAK UNION of the United States and Canada et al., Appellees.**

[Cite as *Putka v. First Catholic Slovak Union* (1991), 75 Ohio App.3d 741.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59101.

Decided Aug. 26, 1991.

742

*John R. Vintilla,* for appellant.

*Thompson, Hine & Flory, William B. Leahy* and *Mark A. Gamin,* for appellees.

___

KRUPANSKY, Chief Justice.

Plaintiff Andrew Putka filed an amended complaint on December 1, 1988 in Cuyahoga County Court of Common Pleas case No. 153196 against defendants First Catholic Slovak Union of the United States and Canada (hereinafter "FCSU") and fifteen individuals [1] holding various positions with the fraternal organization, alleging defendants collectively:

(1) maliciously conspired to expel plaintiff from their organization in violation of his rights;

(2) engaged in extreme and outrageous conduct, causing plaintiff "anxiety, insult, embarrassment and humiliation"; and

(3) published in the FCSU weekly publication "Jednota" [2] a malicious, false and defamatory report, causing plaintiff to be held up to scorn and ridicule in his community and injuring his professional reputation.

Plaintiff sought relief requesting an injunction, compensatory and punitive damages. The trial court denied injunctive relief. Thereafter, plaintiff ap-

___

1. Defendants named in the complaint are as follows: Joseph R. Kristofik, Thomas J. Guidish, Cyril M. Ferenchak, Steven G. Luca, Rev. Charles Hawkins, George Yakubisin, Andrew S. Beno, Andrew Micek, Joseph J. Krajsa, Edward G. Yuhas, Regis Berkosky, Charles M. Terek, Steve Yusko, Michael Ragan, and Michael Dobis. These individuals are President, Vice President, Secretary–Treasurer, Chairman of the Board of Auditors, and members of the Board of Directors, respectively, of the FCSU.

2. The title Jednota means "our Union."

pealed to this court from the denial of his request for injunctive relief in case No. CA 56199. This appeal was subsequently dismissed on defendants' motion without objection by plaintiff. Defendants then made a joint motion for summary judgment in the trial court October 6, 1989, which was granted by the trial court as to all claims on December 12, 1989.

The relevant facts follow:

Plaintiff was an active member and often held elected office in the FCSU, a fraternal organization organized to promote the spiritual and temporal welfare of its members, who share a common religious and ethnic heritage.

The FCSU offers many services, including providing "death and disability benefits" and assisting the "indigent, aged, sick and disabled members." (See Section 2, FCSU Bylaws.) The FCSU is a nonprofit organization incorporated in Ohio and has a charter and bylaws governing grievance procedures that members agree to obey.

In 1986, the Board of Directors of the FCSU began a corporate reorganization plan to create a holding company and three subsidiaries for its Jednota Printing Co. The board created this plan since the printing company had the potential of generating significant income which the board felt could threaten the FCSU's tax-exempt status. This reorganization plan generated a controversy and was opposed by the Cleveland District (also called the Reverend Stephen Furdek District). It is undisputed that on or about May 12, 1987, plaintiff filed a formal complaint with the Ohio Department of Insurance, alleging certain conflicts of interest and fraudulent conduct and questioning the general reorganization plan. Plaintiff alleged to the investigative agency, among other things, that the plan was effected without membership approval.

The Ohio Department of Insurance, after a thorough investigation, issued a report on December 15, 1987, stating in its conclusion as follows:

*"Conclusion*

"Each of the issues raised by the complainants involved interpretations of the fraternal's constitution and by-laws. Those documents also outline a procedure that members may use to submit such interpretative matters for resolution by the fraternal. In this case, the complainants didn't follow the procedures mandated by these basic organization documents.

"Neither the evidence presented by the complainants, nor the evidence developed in the Department's investigation warrants proceeding with a show cause hearing pursuant to Ohio Revised Code Section 3921.26.

"Additionally, I have no uncertainty that the fraternal presented the reorganization to the Department for consideration during its planning stages in 1986. At that time, sufficient disclosures were made for the Department to

consider the matter. At that time, the Department concluded that the matter was an issue controlled by the investment law provision of Ohio Revised Code Section 3907.14 and approved the matters as proper investments for the fraternal. Nothing in this investigation warrants reconsideration of the determinations made by the Department under that section."

The board of directors of the FCSU issued a formal complaint, in a letter dated February 19, 1988, against plaintiff and others at the Cleveland District informing them of their infractions of specific bylaws and that disciplinary action would be taken.

Subsequently, on March 23, 1988, the board of directors met and unanimously voted to expel plaintiff from membership in the FCSU.

Plaintiff admitted in deposition taken by defendants that he failed to bring his complaints regarding FCSU corporate reorganization to the FCSU before filing his complaint with the Ohio Insurance Commission as required by Sections 4.07 and 16.11 of the FCSU Bylaws, which follow:

"4.07 LOSS OF MEMBERSHIP

"A member or branch may forfeit right to membership by failure to pay dues, fines, assessments or failure to comply with the Constitution, Bylaws or rules and regulations as established."

"16.11 ACTION AT LAW IN CIVIL COURT

"No action at law or complaint shall be filed or entered in any civil court on the part of a member against the F.C.S.U. without first exhausting the privileges of trial and appeal in the various forums of the F.C.S.U. The bringing of any such action by a member will be considered a breach of the Bylaws punishable by fine or expulsion, either or both in the discretion of the Board of Directors. This section shall cover all complaints which members may have against the officers of the F.C.S.U. or against the F.C.S.U."

Plaintiff appealed his expulsion to the Supreme Court of the FCSU, a remedy provided by the bylaws. His expulsion was reduced to a one-year suspension from membership.

Thereafter, plaintiff appealed the decision of the Supreme Court of the FCSU to the Convention of the FCSU, which is the "supreme legislative power and judicial tribunal in the FCSU." (Section 11.01, Bylaws.) A grievance committee was appointed by the convention. Plaintiff refused to attend any sessions although requested by letter dated August 9, 1988 to do so. The convention voted and recommended plaintiff's expulsion be reinstated in August 1988.

Thereafter, in several editions of "Jednota," the FCSU's official newspaper, plaintiff's expulsion as well as that of others involved in filing the complaint to the Ohio Department of Insurance was reported.

From summary judgment granted by the trial court for all defendants, plaintiff timely appeals. Plaintiff sets forth two assignments of error as follows:

"I. The trial court entered summary judgment for the defendants on all the plaintiff's claims in violation of the scope and purpose of Rule 56 of the Ohio Rules of Civil Procedure.

"II. The trial court's judgment is contrary to law."

Plaintiff's two assignments of error lack merit.

Plaintiff's brief separately argues the following three issues; *viz.*, (1) his expulsion from membership in the FCSU; (2) the conspiracy to violate his rights by the FCSU's "outrageous acts"; and (3) his defamation through the publication reporting plaintiff's expulsion in the FCSU's newspaper, "Jednota."

## EXPULSION FROM MEMBERSHIP

Plaintiff argues his expulsion by the FCSU was unlawful and deprived him of his property rights, setting forth the following separate issues:

"The unlawful expulsion of the plaintiff from membership in the F.C.S.U. deprived him of the right to participate as a delegate to the 43rd Convention of the F.C.S.U. and of his property rights as a member of the society.

"A fraternal organization may not bind a member in advance to renounce his right to appeal to the courts for the redress of wrongs.

"The punishment of the plaintiff because of his role in the complaint to the superintendent of insurance, is irregular and invalid.

"Where a member of a fraternal society is punished because of his criticism of the actions and conduct of the officers of the society, such punishment is in conflict with the free speech provision of the Constitution of the United States and of the State of Ohio; therefore, a court of equity will grant the appropriate relief.

"The punishment visited upon the plaintiff by the F.C.S.U. was so harsh as to be confiscatory of his rights as a member of the branch and district of the F.C.S.U.

"A member of a fraternal benefit society is not bound by invalid laws or arbitrary proceedings or decisions of the officers on forums of the society. The principal [*sic*] of mutuality of obligations requires both parties to a

compact (bylaws) to abide it. Failure of one party to do so, relieves the other of his obligations thereunder."

Plaintiff's arguments are unpersuasive.

A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C), which specifically provide before summary judgment be granted, the following must be determined:

" * * * No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

It is axiomatic that in deciding whether the trial court correctly granted summary judgment, the court *sub judice* must follow Civ.R. 56 and "look at the record in the light most favorable to the party opposing the motion * * *." *Campbell v. Hospitality Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 58, 24 OBR 135, 138, 493 N.E.2d 239, 242.

The party seeking summary judgment, defendants in this case, bears the burden of showing no genuine issue of material fact exists for trial. *Harless v. Willis Day Warehousing* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The inferences to be drawn from the underlying facts contained in the depositions, affidavit and other evidentiary materials must be construed in the opposing party's favor, *i.e.*, plaintiff Putka; thus, summary judgment must be denied if reasonable minds could find for the party opposing the motion, Putka in this case. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 136, 522 N.E.2d 477, 478, citing *Hounshell v. American States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 314.

In plaintiff Putka's first issue, he asserts his "expulsion as a member of the FCSU was accomplished in violation of the Bylaws and contrary to the controlling laws of our land."

In essence, plaintiff argues he had a property right in seeking elected office and was deprived of that right.

Implicit in the concept of protecting an individual's due process rights, both federal and state, is that two elements must be met, *viz.:* (1) a right or privilege must be deprived without due process; and (2) state action must have accomplished the deprivation, *i.e.*, the state must be the actor since private conduct, no matter how unfair, is not subject to scrutiny under due

process requirements. *Natl. Collegiate Athletic Assn. v. Tarkanian* (1988), 488 U.S. 179, 190, 109 S.Ct. 454, 461, 102 L.Ed.2d 469, 483, citing *Shelley v. Kraemer* (1948), 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161, 1180; *Gotsis v. Lorain Community Hosp.* (1974), 46 Ohio App.2d 8, 15, 75 O.O.2d 18, 21, 345 N.E.2d 641, 645.

Plaintiff has failed to establish (1) that he had a property right in his continuing membership and possible future election to office as a delegate in the FCSU or (2) that his dismissal involved any state action whatsoever. See *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (holding a tenured state employee has a property right to continued employment and must be accorded due process before serious disciplinary sanctions). To the contrary, plaintiff brought his claim against the FCSU and its fifteen named representatives who heard the charges and ultimately expelled him from membership without any allegation of state action government involvement. Therefore, plaintiff's argument that his expulsion was accomplished in violation of the "controlling laws of our land" is not well taken and is overruled.

Plaintiff next contends the FCSU violated the due process rights afforded to plaintiff as a member by the FCSU Bylaws in the following ways:

(1) by failing to provide notice of charges against him as required by Section 16.03 of the Bylaws "at least fifteen days in advance of the hearing";

(2) by punishing plaintiff by expulsion, which was too arbitrary, unlawful and harsh;

(3) by punishing plaintiff for exercising his rights of free speech; and

(4) by failing to recognize plaintiff was neither required nor limited to pursuing the remedies for redress of grievances as set forth in the FCSU Bylaws.

■■■ Generally speaking, in matters of policy, discipline or internal economy of a voluntary association, wherein the members have mutually agreed upon a charter or rules, the decision of the association itself is supreme. See, generally, 60 Ohio Jurisprudence 3d (1985), Insurance, Section 1555. In the absence of mistake, fraud or management activity in excess of its corporate powers, a decision by such association in accord with its own charter and rules made by the governing body must be accepted by courts of law. *State ex rel. Ohio High School Athletic Assn. v. Judges of the Court of Common Pleas of Stark County* (1962), 173 Ohio St. 239, 248, 19 O.O.2d 52, 57, 181 N.E.2d 261, 266; see, also, *Normali v. Cleveland Assn. of Life Underwriters* (1974), 39 Ohio App.2d 25, 28, 68 O.O.2d 169, 170, 315 N.E.2d 482, 484.

■ In the case *sub judice,* plaintiff first complains he was denied due process under the Bylaws of the FCSU because he was not notified of the charges against him pursuant to Section 16.03(a), Trials, which states as follows:

"(a) When charges are preferred before the Board of Directors, the accused may be notified at least fifteen (15) days in advance of the time and place of the hearing and must receive a written statement of the charge against him (her)."

The FCSU board issued a formal written complaint, naming plaintiff, in a letter to Ferenchak addressed to the Cleveland District of the FCSU on February 19, 1988. Plaintiff, as both a member of the district and an attorney, was instrumental in filing the complaint with the Ohio Department of Insurance. Plaintiff, therefore, had constructive notice of his infraction of FCSU Bylaws when he filed the initial complaint in violation of Bylaws Section 16.11. Thereafter, when the board notified plaintiff's district by letter of charges against plaintiff and others on February 19, 1988, plaintiff had actual notice. The board held its annual meeting March 23, 1988. Plaintiff, thus, had more than the fifteen-day notice required by the bylaws.

Assume, *arguendo,* plaintiff was not sufficiently on notice to appeal to the board, plaintiff was given ample opportunity to effect his appeal to both the FCSU Supreme Court and the convention. Plaintiff did not appear before a grievance committee of the convention, as was requested to present his defense, and plaintiff was subsequently expelled by the convention. Thus, plaintiff failed to prosecute his own appeal to the full extent allowable and provided for in the bylaws and cannot now claim prejudice or that his expulsion was arbitrary, unlawful or harsh.

The Bylaws of the FCSU clearly provide that a member's failure to comply with "the Constitution, Bylaws, or rules and regulations" may result in loss of membership. (Section 4.07, Bylaws.)

The FCSU bylaws provide at Section 16.11 as follows:

"16.11 ACTION AT LAW IN CIVIL COURT

"No action at law or complaint shall be filed or entered in any civil court on the part of a member against the F.C.S.U. without first exhausting the privileges of trial and appeal in the various forums of the F.C.S.U. The bringing of any such action by a member will be considered a breach of the Bylaws punishable by fine or expulsion, either or both in the discretion of the Board of Directors. This section shall cover all complaints which members

may have against the officers of the F.C.S.U. or against the F.C.S.U." [3]

A clear reading of the bylaws, with application of the facts in the case *sub judice*, provides support for the decision of the FCSU board, supreme court and convention to find plaintiff breached the "Bylaws, punishable by * * * expulsion," since plaintiff filed the complaint with the Ohio Insurance Commission without first utilizing and exhausting the internal remedies of trial and appeal provided to the membership. Plaintiff clearly was afforded all the essentials of due process in the proceedings undertaken for his appeal resulting in his expulsion from the FCSU. See *Normali, supra,* 39 Ohio App.2d at 31, 68 O.O.2d at 172, 315 N.E.2d at 486.

The appeals process was conducted in strict adherence to the facial provisions of the FCSU bylaws at Section 16. Plaintiff failed to produce any evidence of mistake, fraud or management activity in excess of corporate powers; hence, Ohio law requires the decision of the convention, the ultimate governing body of the FCSU, be accepted by the court in the case *sub judice.*

Construing the defendants' motion for summary judgment in a light most favorable to plaintiff, it appears from the evidence and entire record that reasonable minds can come to but one conclusion; *viz.,* that defendants were entitled to summary judgment since no material issue of fact remains to be litigated regarding plaintiff's due process claims under either the United States Constitution or FCSU bylaws.

## CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS

■ Plaintiff appears to argue in this issue that he has a claim for intentional infliction of emotional distress and punitive damages since "conspiracy" is not a recognized tort under Ohio law.

■ Plaintiff complains of the punishment meted out to him by expulsion from the FCSU as "egregious," "cruel" and "outrageous" conduct which caused him "humiliation, insults, embarrassment and disgrace" as a person and attorney.

The Ohio Supreme Court has stated in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, in paragraph one of the syllabus, that the elements of the tort of intentional infliction of emotional distress follow:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such

---

3. The FCSU, required members to seek redress of any grievances first with the organization.

emotional distress, and if bodily harm to the other results from it, for such bodily harm."

See, also, *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 570 N.E.2d 1076; *Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 10 OBR 485, 462 N.E.2d 392.

In the case *sub judice,* a review of the record, including plaintiff's own deposition testimony, indicates he can point to no conduct on defendants' part which may be characterized as "extreme" or "outrageous." Furthermore, defendants were acting within their own organizational parameters and by-laws when moving to expel plaintiff.

Plaintiff's argument claims he has suffered "humiliation, insults, embarrassment and disgrace." None of these complaints is sufficient to rise to the level necessary to constitute the type of physical or serious emotional injury contemplated in the tort of intentional infliction of emotional distress. *Yeager, supra.* In addition, plaintiff's deposition indicates he suffered from stress but had seen no psychologist or physician for emotional or physical problems arising from his expulsion from the FCSU.

Thus, plaintiff has failed, as a matter of law, to establish a viable claim since he did not meet any of the required elements of the tort of intentional infliction of emotional distress. *Yeager, supra.*

Accordingly, summary judgment for defendants on this issue was appropriate since plaintiff failed to state a claim for intentional infliction of emotional distress.

## DEFAMATION

 Plaintiff lastly argues his reputation was defamed based on three articles published in the FCSU weekly newspaper, "Jednota," describing his expulsion.

 In order to establish a claim for libel, the following elements must exist:

(1) the statement must be false;

(2) the statement must be defamatory towards the plaintiff;

(3) the statement must be in writing;

(4) the statement must be published; and

(5) the defendant must be proven guilty of some degree of fault.

See *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718; *Hersch v. E.W. Scripps Co.* (1981), 3 Ohio App.3d 367, 374, 3 OBR 430, 437, 445 N.E.2d 670, 678.

Plaintiff *agrees* that "Jednota" may have had a qualified privilege to publish information surrounding his expulsion, but states the statements made therein were *false,* thus exceeding the privilege. Plaintiff states the reporting of the charges was, in essence, slanted, distorted and unnecessarily "defamatory," but fails to identify what exactly was said that was false or defamed him.

A clear reading of the newspaper editions attached to plaintiff's complaint contains a factual report of his expulsion in accord with plaintiff's own recitation of the facts. Plaintiff failed to elucidate which part of the publication was false or defamed him. In addition, plaintiff has failed to answer defendants' assertion of qualified privilege.

In *Hahn v. Kotten, supra,* the court stated as follows:

" 'Defamatory statements are conditionally privileged if they pertain to or are motivated by the existence of some special relationship such as the family, lawyer-client, doctor-patient, or insurer-insured relationship. It is generally accepted as appropriate and desirable that one will take steps to protect the interests of another with whom he shares such a relationship.' " (Emphasis deleted.) *Id.,* 43 Ohio St.2d at 247, 72 O.O.2d at 140, 331 N.E.2d at 720.

" ' "* * * A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation." ' " *Id.* at 246, 72 O.O.2d at 139, 331 N.E.2d at 719.

Assume, *arguendo,* the reporting of plaintiff's expulsion was false and defamatory. In the case *sub judice,* defendants were entitled to assert the defense of qualified privilege since plaintiff failed to allege *actual* malice on defendants' part. *Id.* at 248, 72 O.O.2d at 140, 331 N.E.2d at 721. "Actual malice" requires publication of a defamatory falsehood "with knowledge that it was false or with reckless disregard of whether it was false or not." *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198, 201–202, citing *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

Defendants had a duty to report the results of the internal struggle of differing factions within their own organization by virtue of "commonality of interest." See *Creps v. Waltz* (1982), 5 Ohio App.3d 213, 214, 5 OBR 476, 478, 450 N.E.2d 716, 718. The bylaws actually require the publication of official reports and proceedings of the FCSU Supreme Court. (Sections 4.06, 7.05[g], 7.08[d].)

The FCSU, as a fraternal organization, was qualifiedly privileged to publish the plaintiff's expulsion. Since qualified privilege was appropriate, plaintiff was required to allege and show actual malice in the reporting of his expulsion. The record before us is devoid of any demonstration by plaintiff of either falsity of the reporting or actual malice by the defendants. *Hahn, supra,* 43 Ohio St.2d at 248, 72 O.O.2d at 140, 331 N.E.2d at 721, citing *New York Times Co., supra.*

Accordingly, construing the facts established in the pleadings, affidavits, depositions, newspapers and other record parts in the light most favorable to plaintiff, reasonable minds may reach only one conclusion and that is no evidence existed from which a reasonable jury could find actual malice and, thus, defendants were entitled to summary judgment as a matter of law.

*Judgment affirmed.*

ANN MCMANAMON and BLACKMON, JJ., concur.