[Cite as *Heaton v. Ford Motor Co.*, 2017-Ohio-7479.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104636**

## PAUL HEATON, INDIVIDUALLY

PLAINTIFF-APPELLANT

vs.

## FORD MOTOR COMPANY, ET AL.

DEFENDANTS-APPELLEES

### JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-759955

**BEFORE:** Keough, A.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED**: September 7, 2017

**ATTORNEY FOR APPELLANT**

John D. Mismas
The Mismas Law  Firm, L.L.C.
37620 Sturbridge Lane
Willoughby, Ohio 44094


**ATTORNEYS FOR APPELLEE**

Susan M. Audey
Jeffrey A. Healy
Jeffrey M. Whitesell
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Plaintiff-appellant, Paul Heaton, individually and as executor of the Estate of Robert Brawley, appeals the trial court's decision granting summary judgment in favor of defendant-appellee, McCord Corporation. For the reasons that follow, we affirm.

{¶2} In July 2011, Heaton filed a complaint against numerous defendants, including Honeywell International, Inc. and McCord. The complaint alleged various causes of action, including claims of strict products liability, negligence, supplier liability, failure to warn, and breach of warranties. The complaint related to Brawley's exposure to asbestos that caused his mesothelioma and eventual death. As to McCord, it was alleged that Brawley was exposed to asbestos while performing automotive repair and maintenance work as a shade-tree mechanic using McCord gaskets from the 1970s to 2010. It was alleged that this exposure was a substantial factor in Brawley's death.

{¶3} In support of his claim against McCord, Heaton presented the deposition testimony of Michael Victor, a friend of Brawley's who worked on automobiles with him from 1974 to 2010. Victor was the only witness identified by Heaton who could identify Brawley's use of McCord gaskets. Victor was deposed over a period of three days in February 2012, and he identified automobiles that Brawley worked on where he may have used McCord gaskets. During the first day of deposition on February 20, Victor denied any knowledge of Brawley's exposure to asbestos from any home-repair products prior to 2010. On the second day of deposition on February 27, when counsel for Honeywell attempted to inquire into potential alternative asbestos exposures, i.e. Brawley's use of

drywall compound products in the 1970s or 1980s that may have contained asbestos, Heaton's attorney instructed Brawley not to answer the question because, according to counsel, Victor already testified about this on the first day of deposition. During this exchange, it was discovered that Victor was now represented by Heaton's counsel for his own asbestos-related claims. Five months after the deposition, Victor passed away.

{¶4} Unbeknownst to any of the defendants, Victor had executed an affidavit, notarized by counsel, on March 30, 2012, less than a month after his deposition, that averred that Brawley used the very drywall products — USG joint compound — that Honeywell's counsel attempted to ask Victor about but was prevented from doing so. The defendants to this lawsuit did not learn about the affidavit until a year later in July 2013, when it was used as support for a bankruptcy trust claim against USG. The defendants later learned that Victor executed a second affidavit in March 2012, averring that Brawley also used Gold Bond joint compound products, which was likewise used to support a bankruptcy trust claim. These affidavits were in direct contradiction to Heaton's February 3, 2012 written discovery responses, specifically Interrogatory Number 38:

> State whether decedent was exposed to asbestos or asbestos containing products which were manufactured, sold, produced, prepared, or distributed by an entity not named as a defendant in this lawsuit. If so[,] identify the manufacturer, the products and the dates of exposure.
>
> ANSWER: Unknown

{¶5} In September 2012, McCord, prior to the undisclosed affidavits being revealed, moved for summary judgment contending that Victor's testimony given at his

deposition about Brawley's use of McCord gaskets was mere speculation. The trial court denied the motion recognizing that Heaton offered the "deposition testimonies of Victor, who at times worked on automobiles with [Brawley]," which was sufficient evidence to create a question of fact "whether [McCord's] gaskets were a substantial factor causing [Brawley's] mesothelioma."

{¶6} On September 18, 2015, Honeywell filed a motion in limine, requesting the exclusion of and any reference to Victor's deposition testimony at trial. The motion was filed because Heaton did not supplement his discovery responses pursuant to Civ.R. 26(E) with the Victor affidavits or the additional information that Heaton was aware of evidence regarding Brawley's exposure to other nonparties' asbestos-containing products. Honeywell maintained that it was not afforded the opportunity to develop pertinent testimony on cross-examination due to counsel's instruction to Victor to not answer the question. It stated that the obstruction became more egregious when counsel later gained knowledge that Victor did in fact have information pertaining to drywall work that involved the use of asbestos-containing joint compound, yet the information was not provided to the defendants. Finally, Honeywell claimed that Victor's passing after the information was available prevented the defendants from cross-examining Victor or the opportunity to develop their affirmative defense of alternative exposure theory.

{¶7} McCord subsequently joined in Honeywell's motion and also filed its own separate motion seeking exclusion of Victor's testimony. According to McCord, Victor's testimony identifying that Brawley used McCord gaskets during automotive

repair was speculative, not based on personal knowledge, and would cause confusion to the jury.

{¶8} Heaton opposed the motion, contending that the motion in limine was procedurally flawed because it should have been a request for sanctions pursuant to Civ.R. 37. Nevertheless, Heaton argued that no prejudice occurred to the defendants because the affidavit could be used at trial to discredit Victor, but excluding Victor's deposition testimony would be severely prejudicial to plaintiff's case. Heaton characterized the potential exclusion as being "the death penalty" to his case against McCord. In addition to its opposition to exclusion and as a compromise, Heaton offered stipulations of fact about Victor's testimony and Brawley's use of USG and Gold Bond All-Purpose joint compound. The stipulations included that the use of both joint compounds "was a significant exposure to asbestos which would [sic] was a substantial factor in causing his disease." Heaton's counsel emphatically maintained that the lack of disclosure was done in error, not done willfully or in bad faith, and any sanction imposed should be against him, and not his client. Finally, Heaton argued that the defendants could have, but chose not to, filed a motion to compel the testimony or called the court for instruction on whether Victor should be compelled to answer the questions that plaintiff's counsel prevented.

{¶9} On October 2, 2015, at the oral hearing on the joint motions, Heaton's counsel reiterated the arguments made in his brief in opposition and maintained that any sanction should be levied against him personally, rather than excluding the evidence.

The defendants applauded counsel's willingness to accept any sanction, but maintained that the prejudice to the defendants could not be cured with a sanction against the attorney. The trial court agreed. The court noted that it attempted to determine a less drastic remedy, but based on his experience presiding over asbestos litigation, apportionment of liability under the circumstances could be problematic. Therefore, after considering the relevant case law regarding discovery violations, weighing the relevant factors, and comparing the circumstances of the case to other cases that the trial judge presided over, the court orally ruled that Victor's deposition testimony would be excluded at trial.

{¶10} Following the court's decision, McCord again moved for summary judgment contending that with the exclusion of Victor's testimony, no evidence existed to support Heaton's claim that Brawley was ever exposed to any asbestos-containing product manufactured or sold by McCord. Accordingly, McCord maintained that no genuine issue of material fact exists and it is entitled to judgment as a matter of law.

{¶11} While McCord's summary judgment was pending, Heaton moved to reopen discovery for the purposes of the parties to depose Brawley's brother-in-law, Roy Heaton ("Roy"). According to Heaton, Roy could testify about the drywall work that Brawley and Victor performed in 1971 and 1972. The purpose for this testimony was to cure any prejudice that the nondisclosure of the Victor affidavits caused, thus remedying the error. Additionally, Heaton asked for reconsideration of the trial court's exclusion order due to Roy's testimony. McCord opposed both motions contending that Roy was not a newly

discovered witness with new information, and he was never named as a product-identification witness. McCord pointed out that Heaton testified at his own deposition about the work Brawley performed with and for Roy, and none of it pertained to home remodeling, only automotive and agricultural repair.

{¶12} Following a February 22, 2016 hearing on Heaton's motion for reconsideration, the trial court issued a written opinion denying the request. In the opinion, the court found and concluded that Heaton failed to meet his burden on reconsideration. The court noted that the failure to timely disclose the Victor affidavits following counsel's prevention of Victor from testifying at deposition could not be cured by any stipulation or new facts.

{¶13} On April 13, 2016, the court conducted a hearing on McCord's motion for summary judgment. During the hearing, Heaton again asked the court to reconsider its prior exclusion order and the denial of reconsideration because without Victor's deposition testimony, no evidence existed regarding Brawley's use of McCord's gaskets. The trial court summarily granted McCord's motion. At the request of Heaton, the trial court included Civ.R. 54(B) certification to this order, declaring no just reason for delay.

{¶14} Heaton now appeals, raising three assignments of error.

{¶15} This case revolves around the exclusion of Victor's deposition testimony, which is not disputed by the parties. What is disputed is the scope of the appeal and whether the court erred in granting summary judgment in favor of McCord based on the court's decision excluding the testimony.

## I. Scope of the Appeal

{¶16} McCord filed a motion to limit the scope of the appeal, contending that the only order properly before this court is the trial court's decision granting summary judgment in its favor. According to McCord, any challenge to the underlying "Victor orders" — the orders excluding Victor's deposition testimony and the denial of reconsideration — are improper, untimely, and are not reviewable because those decisions affect defendants that are not parties to the appeal. Therefore, McCord asks this court to limit the scope of the appeal to only review the summarily decided second motion for summary judgment. On the other hand, Heaton argues that the Victor orders merge into the trial court's order for summary judgment and are thus reviewable on appeal.

{¶17} The motion was referred to the merit panel for consideration. Additionally, because of McCord's argument, this court ordered the parties to be prepared to address at oral argument whether the grant of summary judgment is a final appealable order when the underlying and interlocutory orders that serve as the basis for the trial court's decision affects nonappealing parties.

{¶18} In cases involving multiple parties or claims, an order is final if it satisfies one of the grounds under R.C. 2505.02 and also satisfies Civ.R. 54(B). The May 27, 2016 order granting McCord's summary judgment disposed of all claims asserted against it. The order satisfies R.C. 2505.02(B)(1) because granting summary judgment in favor of McCord (1) affects Heaton's substantial right of recovery against McCord, (2)

determines the action because it resolves all of Heaton's claims against McCord, and (3) prevents a judgment in favor of Heaton.

{¶19} The order also satisfies Civ.R. 54(B) because the case involves multiple claims and multiple parties, and the grant of summary judgment was only in favor of McCord, disposing of all Heaton's claims against McCord. Therefore, the inclusion of the trial court's "no just reason for delay" certification makes the order granting summary judgment final and appealable.

{¶20} It is clear under Ohio case law that when a final judgment has been entered terminating an entire case, all prior interlocutory orders will merge into the final judgment and be appealable at that time. *Lingo v. Ohio Cent. RR.*, 10th Dist. Franklin No. 05AP-206, 2006-Ohio-2268, ¶ 17. As the Sixth District noted in *Davis v. Galla*, 6th Dist. Lucas No. L-08-1149, 2008-Ohio-3501, the law is not so clear when the final judgment being appealed from does not terminate an entire case, but only terminates the case as to one defendant. *Id*. at ¶ 6. The *Davis* court held, "only prior interlocutory orders which relate in some way to the ruling disposing of the defendant will merge into the final judgment as to that defendant." *Id*.

> For example, if a trial court judge makes an interlocutory ruling that certain documents will not be considered in making its decision on a summary judgment motion and subsequently, finding that there is no just reason for delay, the judge grants the summary judgment motion as to one of the defendants, then an appeal from the grant of summary judgment may include an appeal from the interlocutory ruling concerning the consideration of documents. The "documents ruling" will merge into the final order granting summary judgment. This reasoning is consistent with the outcome in other Ohio cases. *See Reaume v. Mendoza* (Sept. 14, 2001), 6th Dist. No. F-01-005, 2001 Ohio App. LEXIS 4110; *Loeschner v. Clark*

*Material Handling Co.* (Sept. 16, 1998), 9th Dist. No. 97 CA 006856, 1998 Ohio App. LEXIS 4318; and *Gebhart v. College of Mt. St. Joseph* (1995), 106 Ohio App.3d 1, 665 N.E.2d 223.

*Id.*

{¶21} However, according to McCord, the merger of interlocutory orders only applies when there is a one-to-one party relationship with the interlocutory order and final appealable order. *See, e.g., CNT Constr., Inc. v. Bailey*, 8th Dist. Cuyahoga No. 96292, 2011-Ohio-4640, quoting *Davis*; *Grady v. Charles Kalinsky, D.D.S., Inc.*, 165 Ohio App.3d 306, 2005-Ohio-5550, (8th Dist.); *Vaccariello v. Smith & Nephew Richards, Inc.*, 8th Dist. Cuyahoga No. 76594, 2000 Ohio App. LEXIS 3516 (Aug. 3, 2000). McCord contends to hold otherwise would be unfair and unjust to the other nonparty defendants who are affected by the Victor orders.

{¶22} In this case, the decisions striking Victor's deposition testimony and denying reconsideration clearly relates to the termination of the case against McCord because absent these orders, summary judgment would not have been granted. The unique factor about this case is that the discovery sanction against Heaton not only relates to the overall ruling disposing of McCord, but also relates to the other remaining defendants who are not parties to McCord's motion for summary judgment.

{¶23} If we granted McCord's motion to limit the scope of the appeal, we would have to assume without deciding, that the trial court's exclusion of Victor's deposition testimony was proper, and by default, summary judgment was properly granted. The parties agree that without Victor's testimony, Heaton's case against McCord fails.

Accordingly, if we agree with McCord's position about the scope of the appeal, a review of the summary judgment order is essentially an act of futility.

{¶24} We find that Heaton specifically requested that the trial court include the Civ.R. 54(B) language and further requests this court to review the merits of the Victor orders. Because we find no authority preventing this court from reviewing an interlocutory order that typically would merge into the summary judgment order, and our disposition would not be prejudicial or affect the rights of the nonappealing defendants, we will review the court's decisions excluding Victor's deposition testimony. Based on these circumstances, this court will not limit the scope of the appeal as requested by McCord. Accordingly, the motion is denied.

## II. Striking Victor's Testimony

{¶25} In his first assignment of error, Heaton contends that the trial court abused its discretion in striking Victor's deposition testimony.

{¶26} Heaton asks this court to review this assignment of error under a heightened abuse of discretion standard because the exclusion of Victor's testimony eviscerates his case against McCord. However, this heightened standard is typically used when considering involuntary dismissals with prejudice under Civ.R. 41(B)(1) where the dismissal forever denies a plaintiff a review of a claim on its merits. *See, e.g., Jones v. Hartranft*, 78 Ohio St.3d 369, 371-373, 678 N.E.2d 530 (1997). The exclusion of Victor's testimony only resulted in summary judgment for McCord, Heaton's case against the remaining defendants was not dismissed. Additionally, a ruling of summary

judgment is a decision made on the merits of the case. *Stuller v. Price*, 10th Dist. Franklin Nos. 02AP-29 and 02AP-267, 2003-Ohio-583, ¶ 23, quoting *Cunningham v. A-Best Prods. Co.*, 4th Dist. Washington No. 94 CA29, 1995 Ohio App. LEXIS 3174 (July 26, 1995). Accordingly, we will review this assignment of error under the ordinary abuse of discretion standard.

{¶27} Courts have broad discretion over discovery matters, including motions for sanctions. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. "A reviewing court shall review these rulings only for an abuse of discretion." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 662 N.E.2d 1 (1996), syllabus. "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable." *State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, ¶ 18.

{¶28} Civ.R. 26(E) provides that "a party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except" when "a party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response." Civ.R. 26(E)(2); *Normali v. Cleveland Assn. of Life*, 39 Ohio App.2d 25, 315 N.E.2d 482 (8th Dist.). Civ.R. 37(C)(1) permits a trial court to exclude the evidence or impose any other sanction when a party fails to correct or supplement an earlier response. Specifically, the rule provides:

(1) **Failure to supplement**. If a party fails to provide
                information or identify a witness

as required by Civ.R. 26(E), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(a) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(b) may inform the jury of the party's failure; and
(c) may impose other appropriate sanctions, including any of the orders listed in Civ.R. 37(B)(1)(a) through (f).

Civ.R. 37(C)(1); *Lynch v. Myers*, 6th Dist. Erie No. E-84-17, 1985 Ohio App. LEXIS 5953 (Mar. 8, 1985) (plaintiff obligated under Civ.R. 26(E)(2) to correct a mistaken discovery response and that failure to do so permitted the trial court to exclude evidence as a sanction under Civ.R. 37).

{¶29} Counsel admitted that the affidavits were not immediately made available to the defendants and the master consolidated discovery requests, specifically Interrogatory Number 38 were not updated. However, counsel explained that it was merely an oversight, not an intentional act to withhold information. Therefore, according to Heaton, the trial court abused its discretion in excluding Victor's deposition testimony.

{¶30} Even if the withholding of Victor's affidavits was not willful, the exclusion of evidence under Civ.R. 26(E) and 37(B) can be the result of neglect, inadvertent error, or unintentional error. *See Savage v. Correlated Health Servs.*, 64 Ohio St.3d 42, 55, 591 N.E.2d 1216 (1992), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 85, 482

N.E.2d 1248 (1985). Rather, "the existence and effect of prejudice resulting from noncompliance with the disclosure rules is of primary concern, not just the intent or motive involved." *Huffman* at *id*. Whether the noncomplying party's conduct may be the result of neglect, strategy, or inadvertent error, it is still a breach of duty giving rise to unfair surprise and authorizes the trial court to impose a sanction sufficient to remedy the prejudice. *Id.*

{¶31} Heaton further contends that the trial court abused its discretion in excluding Victor's deposition testimony because the inability to depose Victor on the home-repair issue was the result of defendants' own inactions. Specifically, Heaton contends that the defendants, including McCord, could have (1) attempted to revisit the issue of home repair during day three of Victor's deposition; (2) subpoenaed Victor under Civ.R. 45; (3) moved to compel his attendance at another deposition; (4) moved to compel Victor to answer the question after plaintiff's counsel instructed Victor not to answer; (5) called the trial judge for a ruling on whether Victor should be ordered to answer the question, or (6) moved to compel Heaton to update or supplement the answer to Interrogatory Number 38 once the bankruptcy claim forms with Victor's affidavits were discovered.

{¶32} We disagree with Heaton's attempt to impute fault on the defendants. Once Victor executed the affidavits, which was less than a month after his deposition, Heaton was aware that the interrogatories were required to be updated or supplemented under Civ.R. 25 and 37, yet he failed to do so. Additionally, Heaton understood that the defendants were asserting alternate exposure defenses and because home-repair products

were potential "alternative exposures" to asbestos, Heaton had an obligation to supplement his discovery responses, especially considering that plaintiff's counsel knew that Victor's health was deteriorating due to his own exposure to asbestos. The fault that Heaton is attempting to place on McCord and the other defendants is misdirected.

**{¶33}** Heaton also contends the trial court abused its discretion in excluding Victor's deposition testimony because no court order was violated. In support of Heaton's argument he relies on this court's decision in *Tiburzi v. Adience, Inc.*, 8th Dist. Cuyahoga No. 96591, 2012-Ohio-803. In *Tiburzi,* sanctions were imposed when the physician, a nonparty, failed to appear for a deposition. However, this court reversed the trial court's sanction order because under Civ.R. 37(B)(2)(c), no motion to compel had been filed when the physician failed to appear, and that, as a result, there was no discovery order that had been violated. *Id*. at ¶ 23. However, *Tiburzi* is distinguishable because under Civ.R. 37(C), no court order is required before a court can impose sanctions for failing to supplement or correct prior discovery responses.

**{¶34}** The Ohio Supreme Court has consistently ruled that when imposing a discovery sanction, the court must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *See, e.g., Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus. As the Ohio Supreme Court noted, not every violation of Civ.R. 26 will call for the drastic remedy of exclusion of evidence. "Instead, the trial court should weigh the conduct of the party offering [evidence] along with the level of prejudice suffered by the opposing party attributable to

the discovery violation, in order to determine the appropriate sanction." *Savage,* 64 Ohio St.3d at 55, 591 N.E.2d 1216.

**{¶35}** In this case, the trial court requested that the parties negotiate an alternative to striking Victor's testimony to remedy the nondisclosure. However, the court noted that if no agreement could be reached, he would have to make the decision. Heaton submitted proposed stipulations that NGC Gold Bond and USG joint compound exposure were both substantial factors in causing the disease to Robert Brawley. McCord and the remaining affected defendants did not accept the stipulations because they did not provide sufficient information for a jury to apportion liability.

**{¶36}** The trial court conducted a hearing on the joint motion to strike Victor's deposition testimony, which included reviewing the proposed stipulations offered by Heaton. Following arguments from all parties, the court considered the relevant case law and factors in deciding whether striking Victor's deposition testimony was the least severe sanction.

**{¶37}** The court concluded that the only sanction available based on the circumstances was striking Victor's deposition testimony. It stated:

> I do not find that the [prejudice to the defendants] was exaggerated. We're constantly being told by learned men and women that mesothelioma is a dose-related disease. And how are they to inform the jury of the nature of the dose that the decedent received in home remodeling.
>
> A kitchen makeover [sic] is not usually very quick. * * * But we don't know whether this took a half an hour or five weeks because the only man that can tell us is dead.

And the plaintiff knew well before he died that he and the decedent here did this remodeling work. So the prejudice to these defendants certainly is not exaggerated.

\* \* \*

The fourth factor in regards [sic] to a dismissal, in this case a striking of testimony, is whether less drastic sanctions were first imposed or considered.

Well, as I told you on the phone and I believe we were on the record on Monday, I spent all last Friday afternoon trying to figure out a less drastic remedy. I turned around in my head various things that I could tell to our jury to try to remedy it, but I kept saying even if I told them about this, I would expect a knock on the door from the foreman or the forelady almost immediately, Could the Judge tell us how long this took? How long were the home remodeling products used and how? And of course, I can't because the only two people that know are dead.

October 2, 2015 Hearing, tr. 35-40.

{¶38} We agree with the trial court's conclusions. Striking Victor's testimony was the only adequate remedy because the suggested stipulation did not provide a jury with enough information to properly apportion liability. There was no information that a jury could use to compare the duration and intensity of exposures to joint compounds to the duration and intensity of exposure to brakes, clutches, and gaskets. The stipulations were insufficient to remedy the prejudice caused. However, Heaton contends that what the stipulations lacked in specificity, the bankruptcy claim forms supplied. Specifically,

Heaton contends that the forms provided information on duration, frequency, and proximity. However, our review reveals that the forms merely provide that during a three-month period in both 1971 and 1972, Brawley used specific joint compound, where the mixing and sanding of the joint compound caused a tremendous amount of dust that Brawley was exposed to. Much like the fact that the NGC Bankruptcy Claim and the USG Bankruptcy Claim were denied in the bankruptcy trust cases for "insufficient exposure evidence," the evidence in the stipulations and claim forms are insufficient in this case. *See* Appellant's Brief, Page 30.

**{¶39}** Accordingly, the trial court's decision was not arbitrary or unreasonable. The record demonstrates that the court weighed the value of the testimony against the prejudice to the defendants. The court also considered the relevant case law and determining factors, the circumstances surrounding the nondisclosure, the stipulations and alternatives that Heaton proposed, and whether a less severe sanction could be imposed.

**{¶40}** Accordingly, Heaton's first assignment of error is overruled.

### III. Reconsideration

**{¶41}** In his second assignment of error, Heaton contends that the trial court abused its discretion in denying his motion for reconsideration because even if the court was correct in its initial ruling of striking Victor's testimony, the court should have granted reconsideration after additional evidence was uncovered supporting McCord's alternate exposure theory; thus, making the absence of Victor's testimony about home repair less prejudicial to the defendants. According to Heaton, Roy's deposition

testimony, coupled with the stipulations and bankruptcy claim forms with affidavits, would negate the need to strike Victor's testimony. We review a denial of a motion for reconsideration for an abuse of discretion. *Tusco Grocers v. Rulli Family Foods*, 5th Dist. Tuscarawas No. 2006 AP 07 0038, 2006-Ohio-6665, ¶ 10.

**{¶42}** A review of Roy's deposition makes it clear that he cannot replace Victor's potential testimony about the home repair projects that he and Brawley performed together and their use of joint-compound products. Although Roy Heaton knew that Victor and Brawley worked frequently together, he was not present at all times when they did so. *See* Roy Deposition at 34, 55, 68-69. Specifically, he knew of only two instances that Victor and Brawley did drywall repair jobs — one in the garage and another in the Brawley kitchen — but it was possible that they could have done more home repair work together.

**{¶43}** Regarding the repair to the garage, the bankruptcy claim forms and the stipulations provided that: (1) Brawley used Gold Bond All-Purpose Joint Compound between May 1 and August 1, 1971, to help his parents renovate the garage, (2) the mixing and sanding of the compound created a tremendous amount of dust, which Brawley was exposed to, (3) the Gold Bond joint compound would have contained asbestos that would have exposed Brawley to the asbestos when inhaled, and (4) Brawley's exposure to the Gold Bond joint compound during this renovation was a significant exposure to asbestos that was a substantial factor in causing his disease.

**{¶44}** The additional information that Roy's testimony added was generalities about the project. Roy stated that he did not witness the removal of the damaged drywall or the installation of the drywall sheets by Victor and Brawley. When asked how many sheets were hung, he stated "couple, two, three sheets — three, four sheets." (Tr. 37.) Additionally, he could not recall the manufacturer of the drywall or the joint tape used by Victor and Brawley. But he did recall based on the bag design and what brand the local hardware store carried at that time, that National Gypsum Corporation Gold Bond joint compound was used for the garage project. He further stated that he instructed them how to mix the joint compound — by mixing the dry, powdered joint compound with water in a bucket until the desired consistency is achieved. Roy first testified that the project used two 40 to 50 pound bags of joint compound (tr. 40), but later stated that Victor and Brawley used 25 to 30 pound bags. (Tr. 50.) Roy described the use of dry joint compound as "very dusty." He also testified that he showed them how to mud and sand the seams once it dried, but he did not "stick around and watch them sand the seams." (Tr. 41.) He stated that two or three joint compound layers were used. Roy admitted he was not there the entire time to witness everything that Victor and Brawley performed. (Tr. 42.) He estimated that the project from start to clean up was approximately four to seven days. (Tr. 44-46.) He testified that the garage repair was a dusty process where Victor and Brawley were covered in dust from sanding the joint compound, and that despite the garage door being open, the air in the garage was dusty. (Tr. 127-128.)

**{¶45}** Importantly, however, Roy stated that the garage repair occurred in November 1971, whereas the claim form and affidavit provided that the repair occurred between the months of May 1 and August 1, 1971. When asked, he said he had no knowledge of any other joint compound work in 1971, but it was possible that Victor and Brawley performed additional drywall work without his knowledge or help. (Tr. 50.)

**{¶46}** Regarding the kitchen repair, the stipulations and bankruptcy forms provided: (1) Brawley used USG Joint Compound between March and May 1972 to help his parents redo their kitchen, (2) the mixing and sanding of the compound created a tremendous amount of dust, which Brawley was exposed to, (3) the USG joint compound would have contained asbestos that would have exposed Brawley to the asbestos when inhaled, and (4) Brawley's exposure to the USG joint compound during this renovation was a significant exposure to asbestos that was a substantial factor in causing his disease.

**{¶47}** Roy also discussed the kitchen project Victor and Brawley performed, but he stated it occurred in October or November 1972. He testified that the project was a repair job (as opposed to a "renovation") needing two sheets of drywall to repair an area of approximately six feet across and eight feet high. Roy testified that he saw Victor and Brawley tear down the old drywall and start mudding. However, he stated he only saw [the project] "when they did the second coat and when it was finished." (Tr. 58.) He said he did not supervise, but would come by and visit for "an hour or so, [to] have a beer, talk." *Id.* Roy believed that Victor and Brawley applied three coats of joint compound and that it was "real dusty, dirty job." (Tr. 59.) He stated that for this project, about a

"bag and a half, two bags" of Durabond joint compound was used. *Id.* According to Roy, the kitchen project took three or four days.

{¶48} Although Roy provided some insight about Victor and Brawley's home repair projects, he could not recall any specific details that a jury would need to properly apportion liability. There is little to no information that the jury can use to compare the duration and intensity of exposures to joint compounds to the duration and intensity of exposures to brakes, clutches, and gaskets. It is possible that the "primary exposures" were to home remodeling products, and not to brakes or other automotive parts; however, the defendants were prevented from the opportunity to develop this information about additional alternative or potential exposures. Roy's testimony cannot replace Victor's knowledge because Roy even admitted that he was not present "each and every time that [Victor and Brawley] were working together." (Tr. 55.) Moreover, Roy's testimony often conflicted with the bankruptcy forms, including the duration of each home-repair job and the characterization of what the job actually entailed.

{¶49} The record supports the trial court's decision that Roy's testimony cannot substitute for the lost opportunity to depose Victor on Brawley's alternative exposures. The trial court did not abuse its discretion in finding that Roy's testimony, the proposed stipulations, and the bankruptcy forms with affidavits are inadequate substitutes for Victor's knowledge and testimony; reconsideration was properly denied. Accordingly, Heaton's second assignment of error is overruled.

## IV. Summary Judgment

**{¶50}** After the trial court excluded Victor's testimony, McCord again moved for summary judgment. In support, McCord argued that without Victor's testimony, no genuine issues of material fact exist, and McCord is entitled to judgment as a matter of law. Heaton agreed that without Victor's testimony, it could not prove its case against McCord because no other witness can identify that Brawley used McCord products. Accordingly, the trial court summarily granted summary judgment in favor of McCord. In this third assignment of error, Heaton contends that the trial court erred in granting summary judgment in favor of McCord.

**{¶51}** An appellate court review a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Having found that the trial court did not abuse its discretion in striking Victor's testimony and with Heaton's concession with the trial court and here on appeal that without Victor's testimony it cannot prove its case against McCord because no witness can identify that Brawley used McCord products, we affirm the trial court's decision granting summary judgment in favor of McCord. Heaton's third assignment of error is overruled.

**{¶52}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR