[Cite as *McMahon v. Cooke*, 2024-Ohio-2169.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CARL G. MCMAHON                                   :

    Plaintiff-Appellee,                          :
                                                     No. 113186
    v.                                           :

ANDREA M. COOKE, ET AL.,                          :

    Defendants-Appellants.                       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** June 6, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2015-ADV-211062

---

### *Appearances:*

Reminger Co., LPA, Clifford C. Masch, and Adam M. Fried, *for appellee* ABKCO Music, Inc.

Thompson Hine LLP, Thomas L. Feher, John Allerding, and Ashley M. Bailes, *for appellant* Andrea M. Cooke.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Appellant Andrea M. Cooke ("Andrea") appeals from multiple judgments rendered by the Cuyahoga County Common Pleas Court, Probate

Division, in favor of third-party defendant, ABKCO Music, Inc. ("ABKCO").[1] For the reasons that follow, this court dismisses the appeal as moot.

## I. Factual and Procedural History

{¶ 2} Andrea is the granddaughter of legendary musical artist Sam Cooke, who was murdered on December 11, 1964, at age 31. Denise Arnett Cooke, also referred to within the record as Denise Somerville Cooke ("Denise"), was one of Sam Cooke's daughters and Andrea's mother.

### A. The Royalty Agreement

{¶ 3} In 1986, Denise signed a contract ("the Royalty Agreement") with ABKCO, releasing certain rights to Cooke's musical compositions to ABKCO in exchange for periodic royalty payments. The parties to the Royalty Agreement included Denise's "successors and assigns." Relevant to this appeal, the Royalty Agreement (1) obligated ABKCO to render biannual royalty statements with its payments; (2) permitted Denise to inspect ABKCO's records to verify the royalty statements; (3) afforded a process for Denise to object to the royalty statements and payments; (4) permitted Denise to recoup reasonable attorney fees from ABKCO should she obtain a judgment in a lawsuit against ABKCO; and (5) afforded ABKCO a 30-day cure period upon written notice by Denise of ABKCO's failure to perform.

{¶ 4} Pursuant to Section 9 of the Royalty Agreement, Denise agreed to indemnify ABKCO for "reasonable attorney fees" that arose "out of or [were]

---

[1] At times during the proceeding, the parties referred to ABKCO with the acronym "AMI." This court will identify the appellee as "ABKCO."

connected with any claims by a third party" that were "inconsistent with any of the representations, warranties or agreements made by [Denise]." This section permitted ABKCO to withhold royalty payments pending the determination of "any such claim."

{¶ 5} Until her death in May 2000, Denise received all royalties from ABKCO. After Denise's passing, Andrea retained Attorney Carl McMahon, who notified ABKCO of Denise's passing and requested that it pay all future royalty payments directly to Andrea as Denise's sole beneficiary. In May 2001, at the insistence of ABKCO, McMahon opened an estate for Denise, and ABKCO paid all royalties to Denise's estate.[2]

{¶ 6} In 2009, McMahon assisted Andrea in creating the Andrea Marless Cooke Family Trust ("the Trust"). The Trust named Andrea's children as the sole beneficiaries, McMahon as trustee, and Joseph Silvaggio ("Silvaggio") as alternative trustee. The Trust received the final distribution of funds from Denise's estate. Although Denise's estate was closed in 2009, on April 13, 2010, McMahon, acting as administrator of Denise's estate, signed a royalty assignment assigning Denise's estate's interest in the Royalty Agreement to the Trust. The record reflects that the royalty payments were then deposited into the Trust, and McMahon disbursed funds to Andrea. No party objected to the deposits or disbursements.

---

[2] At the time of her mother's passing, Andrea was 16 years old. McMahon was appointed to act as Andrea's guardian during his administration of the estate.

## B. Andrea Files a Complaint Against Trustees

{¶ 7} On August 28, 2015, Andrea filed a complaint in the probate court against McMahon and Silvaggio, alleging that McMahon and Silvaggio had breached their fiduciary duties by depleting the Trust's assets. She demanded an accounting because McMahon and Silvaggio had stonewalled her prior attempts to audit the financial activity of the Trust. *See* Cuyahoga C.P. Probate No. 2015ADV209988. McMahon filed a pre-answer motion to dismiss, alleging that Andrea did not have standing to bring the complaint because she was not a beneficiary of the Trust, only the settlor of the Trust. Andrea opposed the motion, contending that McMahon's actions in his administration of the Trust estopped him from asserting that she was not a beneficiary of the Trust.

## C. McMahon, as Trustee, Files a Declaratory Judgment Action

{¶ 8} In October 2015, McMahon, as trustee, filed a separate complaint in the probate court against Andrea and her minor children.[3] His complaint sought (1) a declaratory judgment determining whether Andrea is a beneficiary of the Trust, and (2) approving the Trust accounting and his resignation as trustee.

{¶ 9} The complaint alleged that Andrea lost legal custody of her children in September 2015, and that the children had been placed in the custody of the Cuyahoga County Division of Child and Family Services ("CCDCFS"). The

---

[3] In November 2015, McMahon filed an amended complaint, adding as defendants Andrea's other minor child and Cuyahoga County Division of Children and Family Services.

complaint alleged that Paragraph 3(a) of the Trust explained that the only beneficiaries to the Trust were "the persons with withdrawal rights."

> The class of beneficiaries who are entitled to exercise the withdrawal rights provided in this paragraph 3 consists of all of my issue (including the issue of a child of mine) who are living at the time that a contribution is made to the trust. The withdrawal right of such person in that class shall be as specified by the person making the transfer. If there is no direction by such person as to the withdrawal rights of each member of the class, then the withdrawal rights of each class member shall be determined as follows: equally among each of my children, the then living issue of a child of mine who is then deceased to have the right of withdrawal, per stirpes, among them of that deceased child's share.

Paragraph 3(a). No other provision under the Trust defines "beneficiary," and under the plain language of the Trust, Andrea did not possess withdrawal rights.

{¶ 10} Nevertheless, prior to the termination of Andrea's legal custody, Andrea received distributions from the Trust on a regular basis, and even after she lost legal custody of her children, she continued to demand distributions from McMahon, insisting that she was a beneficiary of the Trust, and McMahon obliged. Attached as exhibits to the complaint were copies of numerous checks written from the Trust to Andrea displaying memos such as "Andrea's annual payments," "automobile insurance," "automobile repairs," "criminal attorney fees," "automobile purchase," and "rehab allowance."

{¶ 11} McMahon argued in his complaint that Paragraph 6(o) of the Trust provided that because Andrea had lost legal custody of her children, she was no longer eligible to receive distributions on their behalf. Paragraph 6(o) provides, in its entirety:

To make payments or distributions to an incapacitated or incompetent beneficiary, either directly to such one or to a parent, spouse, or guardian of such one or to any person or organization having charge of or the responsibility for the care of such beneficiary, to be applied for the sole use and benefit of such one. In making any distribution hereunder to a minor beneficiary, the Trustee may make such distribution to any person, bank, or trust company as custodian for such one under the Ohio Transfers to Minors Act. In making any such payment or distribution, the receipt of such recipient shall be a full release to the Trustee and the Trustee shall have no duty to see to the application of any such payment or distribution.

{¶ 12} Shortly after the complaint was filed, the probate court ordered McMahon to continue making weekly Trust distributions to Andrea in the amount of $250 and to pay her rent and utilities to maintain the status quo during the pendency of the litigation.

### 1. The Children's Answer, Counterclaim, and Cross-claim

{¶ 13} Andrea's children, by and through their guardian ad litem, filed an answer and asserted a counterclaim against McMahon, alleging that he (1) had breached his duties as trustee by making distributions to Andrea, who was not a beneficiary of the Trust, and (2) paid himself "excessive fees" in violation of Paragraph 7 of the Trust. The children also asserted a cross-claim, asking the probate court to hold McMahon and Andrea personally liable for any liabilities incurred on behalf of the Trust.

### 2. Andrea's Initial Answer, Counterclaim, and Cross-claim

{¶ 14} On December 12, 2015, Andrea filed an answer, counterclaim, and cross-claim, incorporating all factual allegations from her prior complaint against McMahon. She alleged that at the time she created the Trust, she was

unemployed, had never obtained a high school diploma, and thus knew that the royalties stemming from her grandfather's music would likely be her main source of income for the rest of her life. Andrea alleged that her intention in forming the Trust was to be a beneficiary of the Trust and for her children to be secondary beneficiaries.

{¶ 15} Andrea's counterclaim alleged that when Denise's estate closed in 2009, there had been no assignment of her mother's "Music Rights * * * including but not limited to the right to receive royalty payments." Accordingly, she claimed that because she owned these rights, McMahon acted without authorization when he executed the 2010 assignment of the royalties to the Trust. Andrea's final allegation was that McMahon had been making distributions to her when asked and had never informed her that she was not a beneficiary under the Trust.

{¶ 16} Andrea requested dismissal of McMahon's first amended complaint and sought a reformation of the terms of the Trust to reflect her true intentions. In the alternative, Andrea requested a declaratory judgment that she is the owner of "the Music Rights" and that all assets of the Trust be distributed to her. She also requested a judgment (1) declaring that the Trust is void, (2) for compensatory damages against McMahon and indemnification should she be found liable to a third-party because of her personal use of funds from the Trust; (3) an order that McMahon provide a full accounting of the Trust since its inception; and (4) costs and fees.

### D. ABKCO Becomes Involved in the Lawsuit

**{¶ 17}** The record reflects that in April 2015, prior to Andrea filing her lawsuit, her attorney contacted ABKCO requesting information on royalties paid since 2000 pursuant to the Royalty Agreement. In July 2015, ABKCO advised counsel that it would only provide the requested information to the royalty recipient, i.e., the Trust.

**{¶ 18}** In October 2015, Andrea's attorney mistakenly served a subpoena duces tecum upon ABKCO Music & Records, Inc ("AMR"), rather than ABKCO, requesting numerous documents regarding royalty payments and statements, and communications relating to the same. AMR refused to provide the requested information because it "had no obligation to make royalty payments to [Denise]." As will be discussed below, ABKCO and AMR are two separate entities, but the record is clear that the Royalty Agreement is with ABKCO, not AMR.

**{¶ 19}** In May 2016, "ABKCO" made its first "appearance" in the proceedings below when an "Affidavit of Service" was filed. The filing indicated that on April 29, 2016, AMR had been served with a subpoena issued by Andrea's attorney that sought records relating to the Royalty Agreement.

**{¶ 20}** Thereafter, between June and September 2016, multiple correspondences were exchanged between Andrea's attorney and Michael B. Kramer ("Kramer"), ABKCO and AMR's attorney located in New York. The letters displayed frustration between counsel regarding Andrea's subpoena request for documentation.

{¶ 21} In his June 9, 2016 letter, Andrea's attorney referenced the subpoena issued to AMR and requested compliance with its request by a date certain.[4] In response, Kramer conveyed that "his clients" were willing to provide the requested documentation to the Trust, had in fact provided the documentation to the Trust, and had been advised by McMahon's counsel that the Trust provided those documents to Andrea. In response, Andrea's attorney explained that he did not trust McMahon to provide the documents, was disappointed in "ABKCO's" refusal to respond to the subpoena, and threatened to include "ABKCO" in the litigation. Kramer then sent correspondence to McMahon's attorney expressing disappointment in assurances that were made and questioning McMahon's integrity in handling the estate and now the Trust. Nevertheless, Kramer sent a letter to Andrea's attorney and provided the royalty statements and payment amounts from June 2009 until December 2015.[5]

{¶ 22} Andrea's attorney responded that the documents provided were incomplete because the subpoena served on "AMR" included royalty documentation since 2000, international revenue generated from Sam Cooke's music, and further requested all external communications between "ABKCO" and McMahon, and all internal communications, notes, etc. amongst "ABKCO" officers about the music

---

[4] In this correspondence and subsequent correspondences, Andrea's attorney continued to confuse AMR with ABKCO; counsel served "AMR" with the subpoena, not ABKCO.

[5] Kramer produced the requested royalty payments and statements even though the subpoena was served on AMR.

and royalty rights. Kramer responded that the request amounted to harassment due to the breadth of information requested and further questioned why McMahon, as trustee, was not pursuing this information himself. Kramer insisted that "his clients" had no interest in the outcome of the litigation between Andrea and the Trust.

{¶ 23} Andrea's attorney responded in a detailed letter setting forth its precise demands under the subpoena and its justification for requesting the information. Counsel advised Kramer that this letter was his final attempt to resolve the matter prior to initiating court action. In response and "in an effort to resolve all matters," Kramer provided the royalty statements and payments from 2000 until 2016, minus what he had already provided. Throughout these communications, both attorneys advised that their respective clients were incurring fees and costs regarding this discovery matter.

{¶ 24} In ABKCO's August 19, 2016 royalty statement for the first half of 2016, it advised McMahon:

> As a result of the pending proceeding, entitled *Carl G. McMahon v. Andrea M. Cooke, et al.* (the "Proceeding"), which involves competing claims as to the right to receive the songwriter royalty from [ABKCO], [ABKCO] will hold all such royalties until such time that there is an adjudication as to the proper recipient of such royalties. Please keep us informed of the status of the proceeding and when a final determination might be forthcoming.
>
> As a result of the dispute between [Andrea] and the Trust[,] ABKCO, who has no interest in the outcome in the resolution of the dispute has incurred substantial attorney's fees and costs. Consequently, [ABKCO] reserves any and all rights and remedies it may have in respect of such attorneys fees and costs including [ABKCO]'s right to charge all such

fees and costs against future royalties payable to the Trust or such other individual or entity as a court may hereafter determine.

{¶ 25} In response, McMahnon sent a letter to ABKCO expressing disagreement with ABKCO's "unilateral decision to freeze this revenue stream to the Trust," but "recogniz[ing] your position due to the pending litigation. In the interest of cooperation and to avoid additional litigation expenses, the Trustee accepts your position for the time; however, we reserve the right to revisit the issue if circumstances change." McMahon represented that he "disagree[d] and object[ed] to any claim for attorneys' fees you have incurred in connection with your response to a non-party subpoena in this matter. Withholding future royalties to pay reasonable attorney fees for responding to a subpoena for the records related to the Trust is not reasonable."

{¶ 26} Upon receipt of ABKCO's letter, McMahon filed a motion advising the court of the communication and asking the court to preserve Trust assets by revisiting Andrea's preliminary $250 per week allowance because ABKCO elected to withhold royalty payments and reserved the right to recover fees stemming from those royalties.

**E. Andrea joins AMR and ABKCO as Parties**

{¶ 27} On October 26, 2016, Andrea requested a temporary and preliminary injunction, barring *"ABKCO Music and Records, Inc. ('ABKCO')"* from withholding the royalty payments. Despite Andrea using "ABKCO" as the identifying acronym

for ABKCO Music and Records, Inc., the true acronym is "AMR."[6]  The motion alleged that "[AMR]'s decision to cease paying [r]oyalties is a culmination of a year-long dispute between the company and [Andrea] regarding access to [AMR] records that are critical to this action.  [AMR's] real intention in refusing to continue making payments is to subject [Andrea] to economic duress with the intent of discouraging her from asserting her legal rights."  Attached to the motion were the previously identified June through September 2016 letters exchanged between Andrea's attorney and Kramer.

{¶ 28} In a separate motion filed the same day, Andrea also sought leave to join AMR as a party to the case and amend her answer, counterclaim, and cross-claim.  Again, this filing specifically and exclusively delineates AMR as the proper party.  Relevant to this appeal, Andrea asserted claims against AMR for (1) breach of contract; (2) declaratory judgment; and (3) an accounting.

{¶ 29} The trial court granted Andrea's motion to join AMR and accepted the amended answer, counterclaim, and cross-claim.  The court further granted (1) Andrea's motion for a temporary injunction, enjoining AMR from ceasing to make payments in accordance with the royalty agreement to the Trust and setting a hearing on her application for a preliminary injunction; and (2) ordering AMR to

_____

[6] It is this court's belief that this misidentification continued the confusion regarding to whom Andrea should have directed her subpoena, requests, and claims.  The record reveals that neither Kramer nor AMR were entirely forthcoming during this period of communication that Andrea's attorney had engaged with the wrong entity.

provide a full response to Andrea's document request. The trial court advised that failure to comply could subject AMR to sanctions and attorney fees.

{¶ 30} AMR was joined as a cross-claim defendant and it filed a motion to dismiss, which unmistakenly revealed, for the first time in this matter, that AMR is not a party to and has no obligations under the Royalty Agreement, which had been signed by ABKCO, not AMR. The motion alleged, "[Andrea] has sued the wrong party. She sued AMR for breach of contract, declaratory judgment, and accounting under a Royalty Agreement she claimed AMR breached. But AMR was not a party to the Royalty Agreement." Kramer's affidavit averred that ABKCO and AMR were two entirely different companies, with neither having any ownership interest in the other.

{¶ 31} Andrea opposed the motion to dismiss, alleging that when Kramer initially responded to the subpoena requests more than a year ago, he "responded and suggested that AMR was the proper party from whom Ms. Cooke should be seeking such information/documents."[7] She further alleged that AMR is the parent company of ABKCO, and therefore, had an interest in the litigation.

---

[7] Despite this allegation, Exhibit B to this filing was a letter from Kramer, dated October 28, 2015 that addressed the subpoena served on AMR. The letter advised:

> Let me begin by stating that AMR has no contractual obligations to your client whatsoever, and takes no position one way or the other with respect to the Litigation. AMR shall comply with any appropriate order of the court regarding to whom future accountings and payments should be made. However, as you are certainly aware AMR is not subject to the jurisdiction of an Ohio probate court or its subpoena power and any attempt by you to bring

{¶ 32} On January 11, 2017, which was also the same day Andrea sought leave to add ABKCO to the lawsuit, ABKCO filed a complaint in the New York County Supreme Court against McMahon and Andrea setting forth causes of action for breach of contract and attorneys' fees, both related to the question as to whether ABKCO had a right to set off royalty payments based on costs and fees incurred in responding to Andrea's and McMahon's dispute.[8]

{¶ 33} The probate court granted Andrea's leave to file a second amended answer, counterclaim, and cross-claim to add ABKCO to the cross-claim and add claims against both ABKCO and AMR for the allegedly improper actions of both. Relevant to the appeal, Andrea brought the following claims against ABKCO:

(1) breach of contract, contending that ABKCO breached the Royalty Agreement by withholding royalty payments on August 31, 2016 and asserting false claims in Ohio and New York (Paragraph 139);[9]

(2) declaratory judgment that ABKCO, pursuant to Section 9 of the Royalty Agreement, is not entitled to indemnification nor payment of attorney fees for amounts expended in responding to the subpoena or for defending the claims raised in the action (Paragraphs 148 and 149);

(3) intentional misrepresentations/fraud when it represented to McMahon and the GAL regarding its incurrence of legal fees which

---

AMR into the Litigation would constitute an abuse of process subjecting your firm to appropriate proceedings, both civil and disciplinary.

[8] Although the Complaint was not filed until January 11, 2017, a summons was issued to McMahon in November 2016, and service on Andrea occurred on February 9, 2017.

[9] Unlike in her first amended complaint, which alleged that AMR acted in bad faith, Andrea made no similar allegation that ABKCO acted in bad faith in withholding the royalty payments.

caused ceasing all payments from the Trust to Andrea (Paragraphs 151-152);

(4) negligent misrepresentation regarding its incurrence of legal fees, its right to withhold payments of royalties, and its right to charge attorney fees against the withheld royalty payments (Paragraphs 159-161);

(5) conversion for wrongfully withholding demanded royalty payments that "Cooke is entitled to possession of" as the "sole heir of her mother's estate" (Paragraphs 167-169);

(6) an accounting because she is either the "owner of the rights to the Music Royalties or the beneficiary of the Trust that owns such rights."[10]

In her demand for relief, she sought, in relevant part, compensatory damages, including but not limited to attorney fees for ABKCO's breach-of-contract claim, and a judgment declaring that ABKCO is not entitled to indemnification nor payment of attorney fees for amounts expended in responding to (1) the subpoena issued to it by Andrea, or (2) the claims raised in the action.

## F. Resolution of Trust-Related Claims

{¶ 34} At a January 3, 2017 hearing, McMahon, the Trust, Andrea, CCDCFS, and the children, by and through their GAL, reached an oral agreement regarding all material terms to settle the Trust-related claims. The parties were to memorialize the terms in writing.

{¶ 35} In a March 2, 2017 filing, McMahon advised that all parties except ABKCO and AMR had reached a settlement. He sought permission to resign as trustee and requested fees that he incurred while defending himself in the New York

_____

[10] She asserted the same causes of action against AMR.

litigation. Andrea opposed the motion, alleging that the fees were not incurred because of his role as trustee. McMahon later supplemented this motion with a request for additional fees.

{¶ 36} On March 31, 2017, ABKCO requested a status conference to clarify whether a settlement had been reached between the Trust and Andrea, and further what effect this settlement would have on the claims against ABKCO and AMR. On this same date both ABKCO and AMR, pursuant to Civ.R. 12(B)(1) and (6), filed a motion to dismiss Andrea's second amended cross-claim, contending that (1) she lacked standing because she is not a party to the Royalty Agreement, (2) the probate court lacked jurisdiction because the New York court had exclusive jurisdiction, and (3) Andrea failed to allege that she satisfied the requisite conditions precedent under the Royalty Agreement — "before a breach of contract claim can be asserted; written notice must be provide[d] to [ABKCO] of an alleged failure to perform its obligations followed by a 30-day time within which [ABKCO] has the ability to cure any alleged failure."

{¶ 37} On April 7, 2017, Andrea filed a notice of partial dismissal, dismissing without prejudice her (1) cross-claims against AMR, and (2) cross-claims for misrepresentation/fraud, negligent misrepresentation, conversion, and accounting against ABKCO — only her claims for breach of contract and declaratory judgment against ABKCO remained pending.

{¶ 38} Andrea opposed ABKCO's motion to dismiss, contending that she is the "rightful owner of contractual rights under the Royalty Agreement, such rights

having been transferred to her as the sole heir of her mother's estate," and that "no party has come forward with any document whereby [Andrea] transferred her interest in the Royalty Agreement to the Trust." She further opposed ABKCO'S challenge to the probate court's jurisdiction and averred that her lawsuit against ABKCO predated the New York lawsuit because she did not receive service until after her second amended complaint was filed. Finally, she disputed ABKCO's challenge that she did not satisfy the Royalty Agreement's condition precedent, contending that the allegation in Paragraph 89 in her seconded amended cross-claim clearly set forth that she demanded ABKCO to stop withholding payments under the Royalty Agreement.

{¶ 39} On September 21, 2017, McMahon filed a motion to enforce settlement agreement, contending that Andrea had subsequently made additional demands not agreed upon, and further that the terms of the settlement agreement had not been reduced to writing. Andrea responded to McMahon's motion, contending that certain terms were contingent upon certain events, including resolving the ABKCO dispute. Following a myriad of motions, the Trust-related claims finally came to a close.

{¶ 40} On November 29, 2017, the trial court approved and adopted the Reformed Andrea Marless Family Trust Agreement, executed November 10, 2017, ("Reformed Trust") that identified Andrea as a beneficiary and included an assignment of royalty payments from the original Trust to the Reformed Trust. Incorporated into the Reformed Trust was the "Confidential Settlement Agreement

and Release" ("Settlement Agreement"), executed on November 10, 2017.  Relevant to this appeal, the parties to the Settlement Agreement agreed to an "Assignment of Claims and Causes of Action."  Section 8 provided, in pertinent part:

> McMahon, as Trustee of the Trust, hereby assigns to [Andrea] any and all claims and causes of action held by the Trust as of the Effective Date; and any and all future claims and causes of action that may arise after the Effective Date and prior to August 9, 2021.

{¶ 41} Additionally, the court approved final accountings and fees, removed McMahon as trustee, and appointed William H. Smith as successor trustee of the Reformed Trust.  Finally, on December 13, 2017, McMahon, Andrea, the children, and CCDCFS filed a joint stipulation to dismiss all claims with prejudice and that "each Party will bear their own fees and costs."  The agreement specified that Andrea was "not dismissing her cross-claims against [ABKCO]."

{¶ 42} All that remained was Andrea's breach-of-contract and declaratory-judgment claims against ABKCO, but it would be a long time coming before these two parties would resolve their disputes.

### G.  ABKCO Seeks Dismissal of Andrea's Cross-Complaint

{¶ 43} The trial court conducted a hearing in January 2018 regarding ABKCO's motion to dismiss.  Following the hearing, ABKCO filed a supplemental brief to its pending motion to dismiss, noting that it "became necessary based upon representations by [Andrea's counsel] to this Court at the oral argument."  The substance of the brief argued that (1) Andrea did not have standing to bring the breach-of-contract and declaratory-judgment claims, (2) the probate court lacked subject-matter jurisdiction over Andrea's breach-of-contract and declaratory-

judgment claims based on the pending New York case, and (3) any purported assignment of royalty rights to Andrea or the Reformed Trust under the Settlement Agreement or Reformed Trust did not cure Andrea's lack of standing because any assignment required ABKCO's consent in writing pursuant to Section 10 of the Royalty Agreement — consent that ABKCO had not given. Andrea filed a supplemental opposition and ABKCO filed a reply.

{¶ 44} On April 10, 2018, the court ruled on the motion to dismiss, finding that (1) Andrea had standing to pursue her claims against ABKCO, and (2) the court had subject-matter jurisdiction over Andrea's claims because the New York matter involved different allegations. Regarding ABKCO's claim that Andrea failed to comply with all conditions precedent before bringing this action, the court found that:

> [Andrea] has alleged in her Second Amended Answer and Cross Claim, that she demanded that AMI cease its improper withholding of funds to be paid under the royalty agreement. Further, on October 26, 2017, [Andrea] filed an Amended Answer and Cross Claim, as well as a Motion for Preliminary Injunction, specifically putting [ABKCO] on notice that she was objecting to the withholding of royalty payments by [ABKCO]. The Court finds and **Orders** that Cooke has complied with the condition precedent of written notice.

(Emphasis sic.) Accordingly, the court denied ABKCO's motion to dismiss.

{¶ 45} ABKCO filed an amended answer that included an affirmative defense that Andrea failed to satisfy all conditions precedent under Section 8 of the Royalty Agreement. It also pursued a counterclaim against Andrea, asserting a claim for declaratory judgment that (1) Andrea is not entitled to the withheld

royalties because they were not assigned to her; (2) if the royalties were properly assigned, ABKCO is entitled to the withheld royalty payments for damages, including reasonable attorney fees, it incurred in defending the action, including the claims against AMR; and (3) ABKCO is entitled to indemnification from Andrea for monies expended in regard to third-party claims against AMR.

### H. Summary Judgment: Andrea and ABKCO

{¶ 46} Following a pretrial held on May 15, 2018, another discovery dispute ensued over attorneys' fees and the withholding of the royalty payments, which culminated in the trial court ordering ABKCO to provide Andrea with (1) the amount of royalty payments it was holding; and (2) the amount of fees which ABKCO claimed it was entitled to offset against the withheld payments. The bottom line is that ABKCO refused to make any payments under the Royalty Agreement unless Andrea permitted ABKCO to subtract its fees from the withheld royalty payments pursuant to the indemnity provision. Andrea refused to agree that ABKCO was entitled to indemnification.

{¶ 47} On July 26, 2018, a month after answering ABKCO's counterclaim, Andrea filed a motion for partial summary judgment as to her breach-of-contract and declaratory-judgment claims against ABKCO, and ABKCO's counterclaim against her. She contended that pursuant to the plain language of the Royalty Agreement, ABKCO was not entitled to indemnity for attorney fees because the lawsuits did not involve any misrepresentations by Denise, her successors, or assignees, nor did they involve any claim inconsistent with the representations made

under the Royalty Agreement. Accordingly, Andrea claimed that because ABKCO was not entitled to indemnification, it had no right to withhold any of the royalty payments. She contended that a determination of who the proper payee of the royalty payments was not a basis upon which ABKCO could seek indemnification because it did not affect ABKCO's rights under the Royalty Agreement or Sam Cooke's musical compositions. Andrea claimed that she was entitled to a judgment as a matter of law in her favor on her breach-of-contract and declaratory-judgment claims and ABKCO's counterclaim.

{¶ 48} The probate court granted ABKCO's request for an extension of time to respond to Andrea's request for summary judgment because factual discovery was incomplete. The court afforded ABKCO 30 days from the discovery deadline. Andrea then sought to compel ABKCO to produce discovery (despite already moving for summary judgment), and ABKCO sought a discovery extension. Over the next year, several more discovery disputes arose, and each motion was met with opposition, prompting the probate court to set a hard deadline requiring that all discovery be completed by July 19, 2019; ABKCO was allowed until August 19, 2019, to file its responsive motion to Andrea's motion for summary judgment and file its own motion for summary judgment.

{¶ 49} On August 19, 2019, after the probate court denied another ABKCO request for an extension of time, ABKCO filed its brief in opposition to Andrea's motion for summary judgment and its own motion for summary judgment, urging the probate court to rule in its favor as to Andrea's breach-of-contract and

declaratory-judgment claims.[11] ABKCO contended that it was entitled to summary judgment because (1) Andrea lacked and continued to lack standing because she was not a party to the Royalty Agreement; (2) Andrea's admissions demonstrated that the probate court lacked subject-matter jurisdiction; (3) Andrea failed to meet the requisite conditions precedent under the Royalty Agreement by not providing notice, thereby affording ABKCO an opportunity to cure any purported breach; and (4) under the clear and unambiguous terms of the Royalty Agreement, ABKCO was entitled to indemnification.

{¶ 50} Andrea subsequently opposed ABKCO's summary judgment motion and filed a reply in support of her motion for summary judgment. ABKCO in turn filed a reply in support of its summary judgment motion.

{¶ 51} On November 20, 2019, the trial court issued two judgment entries — the first denied Andrea's motion for summary judgment on her breach-of-contract and declaratory-judgment claims, and the second granted ABKCO's motion for summary judgment on its indemnification claim against Andrea.

{¶ 52} Regarding the denial of Andrea's motion for summary judgment, the court agreed with ABKCO that the plain meaning of Section 9 of the Royalty Agreement was to protect ABKCO from defending against claims by third parties that are inconsistent with the rights of Denise or her successors and assigns to

---

[11] Around this time, the New York lawsuit was resolved; the Supreme Court of New York, Appellate Division, First Department, found that ABKCO did not present sufficient facts to prove that the New York court had personal jurisdiction over the matter. *ABKCO Music, Inc. v. McMahon*, 175 A.D.3d 1201, 2019 NY Slip Op 06721, 109 N.Y.S.3d 264.

receive the royalty payments and the agreements that she made thereunder. Specifically, the court identified Paragraph 10 of the Royalty Agreement wherein Denise agreed that the Agreement "may not be cancelled, altered, modified, amended, or waived, in whole or in part, in any way, except by an instrument in writing signed by the Parties." The court found that Andrea's claims were inconsistent with the Agreement and that she was a third party.

> The Court finds that Andrea created a controversy over who [was] the proper payee under the Royalty Agreement. Initially she assigned the Royalty payment rights to the Original Trust, and the Payments were made to the Trust. Then she filed a complaint against Trustee McMahon, asserting her right to the Payments despite not being specifically named a beneficiary to the Trust. Then she brought [ABKCO] into the controversy through her extensive discovery requests, and by filing claims against [ABKCO] for their withholding of Royalty Payments to which she claim[ed] a right.

> The Court finds that [ABKCO] was justified in regarding [Andrea's] claims as a third-party dispute under the Royalty Agreement.

Accordingly, the court found that no genuine issue of material fact existed and that ABKCO was entitled to judgment on Andrea's claim for breach of contract and declaratory judgment.

{¶ 53} Regarding its decision finding that ABKCO was entitled to indemnification after applying the summary judgment standard, the court determined that (1) Andrea had standing to pursue her claims because she had a claim to the royalty payments under both the Original Trust and Reformed Trust, and the withholding of such payments impacted the administration of trusts; (2) the probate court had jurisdiction over Andrea's claims; (3) neither Andrea nor the Original Trust complied with Section 8 of the Royalty Agreement that required

written notice to ABKCO of a breach of contract and an opportunity to cure prior to pursuing a legal claim; and (4) ABKCO was entitled to indemnification pursuant to Sections 9 and 10 as previously determined in denying Andrea's summary judgment request. The court further found:

> When [Andrea] asserted her right to receive the Royalty Payments in her own right, and regardless of the status of her children, [ABKCO] was brought into the conflict between the Payee Trust and a claim against the Trust. The Court finds that [ABKCO] was justified in regarding [Andrea's] claims as a third-party dispute under the Royalty Agreement.

Accordingly, the court found that no genuine issues of material fact existed and that ABKCO was entitled to summary judgment on Andrea's breach-of-contract claim because she failed to satisfy the condition precedent of notice and opportunity to cure. As such, the court found that ABKCO was entitled to indemnification and damages under the plain language of the Royalty Agreement.

{¶ 54} Andrea timely appealed the probate court's decisions, but the appeal was dismissed for lack of a final, appealable order because the judgment did not determine the amount ABKCO was entitled under the indemnity provision. *See McMahon v. Cooke*, 8th Dist. Cuyahoga No. 109316 (Motion No. 536315) (Feb. 27, 2020).

### I. The Attorney Fees Dispute

{¶ 55} On October 14, 2020, Andrea asked the probate court to set a prehearing schedule and hearing dates to resolve ABKCO'S indemnity amount. On May 4, 2021, following a discovery schedule and deadlines, each party filed respective trial briefs. ABKCO requested a total of $414,527.25 in costs and fees

under the indemnification provision. Andrea opposed the amount, contending that based on her calculations, only $14,250 of the amount requested was reasonable.[12] Thereafter, ABKCO amended its indemnification request twice, seeking a final amount of $476,155.75, which delineated $180,877.45 in fees incurred by Reminger and $295,278.30 in fees incurred by Kramer.

{¶ 56} On June 21, July 7, and July 12, 2021, the probate court conducted hearings on ABKCO's indemnification amount. On September 9, 2021, the court issued a lengthy and thorough journal entry, detailing findings of fact and conclusions of law based on the trial briefs, testimony, and evidence presented at the hearings. Relevant to this appeal, the judgment entry ordered that (1) all fees incurred on behalf of AMR were disallowed, and that since Kramer only represented AMR, all of his fees were disallowed; (2) all billings by Reminger & Co. LPA (ABKCO's counsel) until February 3, 2017, were on behalf of AMR and therefore disallowed; (3) any billed communications between Reminger and Kramer were disallowed; (4) the New York case filed by ABKCO for breach of contract was not covered by the Royalty Agreement, and any fees stemming therefrom were disallowed; (5) ABKCO was entitled to fees allowed through February 28, 2020, in the amount of $86,182.25; and (6) reasonable fees for pursing damages allowed

---

[12] Andrea asserted, however, that with her assessment of the fees, she was not waiving any argument against ABKCO's entitlement to indemnification under the Royalty Agreement.

under the indemnity provision are $25,000. Accordingly, the trial court made the following final orders:

> The Court finds and **Orders** that [ABKCO] is awarded a total of $111,182.25 in attorney fees.
>
> The Court finds and **Orders** that the award of attorney fees shall be deducted from the royalty payments being withheld by [ABKCO].
>
> The Court further finds and **Orders** that all Royalties being held pursuant to the Royalty Agreement minus the allowed attorney fees shall be paid to the [Reformed Trust], which shall then distribute to [Andrea] the full amount that she should have received during the time that Royalties have been withheld.
>
> The Court further finds and **Orders** that [ABKCO] is to remit all future royalty payments to the [Reformed Trust].

The trial court did not specify the amount of royalties ABKCO withheld or what amount ABKCO was ordered to release to the Reformed Trust. Additionally, the court's order did not require ABKCO to provide any royalty statements for the relevant withheld periods.

{¶ 57} ABKCO appealed the probate court's judgment, but this court dismissed the appeal for failure to comply with App.R. 3(A). *See McMahon v. Cooke*, 8th Dist. Cuyahoga No. 110896 (Motion No. 550283) (Nov. 2, 2021). Andrea did not pursue an appeal.

{¶ 58} On November 5, 2021, two months after the probate court's order on indemnification, Andrea filed a motion for order of contempt and sanctions against ABKCO for failing to comply with the court's September 9, 2021 order by failing to

distribute the withheld royalties.[13] In her motion, she contended that ABKCO blatantly disregarded the court's order to pay the balance and further disregarded paying the first 2021 biannual payment pursuant to the Royalty Agreement. Andrea contended the withheld payments totaled at least $330,469.21 and after deducting the amount of ABKCO's attorney fee judgment, ABKCO owed Andrea "at least $210,286.96 ($330.469.21 in Royalties minus $111,182.25 in attorney fees)." In her supplemental motion filed after the November 29, 2021 hearing, she set forth that ABKCO advised her that the withheld royalties now totaled $375,139.51 — "Subtracting the court's award of $111,182.25, the balance to be paid to the [Reformed] Trust is now $263,957.26." In neither of these motions did Andrea contend that (1) she was disputing ABKCO's indemnity fee award and thus not waiving any right to challenge the award, (2) she intended to appeal the indemnity award and thus sought a stay of the amount deducted for those fees, or (3) ABKCO was wrongfully withholding additional money owed to the trust, i.e., the $111,182.25 payable to ABKCO.

{¶ 59} ABKCO opposed Andrea's motion for contempt, contending that she lacked standing to bring the motion because the royalties were payable to the Reformed Trust, but that an interim dispute subsequently arose when Andrea attempted to revoke her mother's original release of Sam Cooke's composition rights. According to ABKCO, it was attempting to resolve these issues with the

_____

[13] At this time, Andrea was now acting on behalf of the Reformed Trust pursuant to the assignment of claims under the Settlement Agreement.

Reformed Trust. Nevertheless, on or about December 8, 2021, ABKCO finally released payment of $263,957.25 to the Reformed Trust.[14]

{¶ 60} The probate court issued an order on August 24, 2022, finding ABKCO in contempt for failing to pay the Reformed Trust the withheld royalties. Nevertheless, the court found that ABKCO purged the contempt by making the subsequent payment.

{¶ 61} While Andrea's motion for contempt was pending, Andrea moved for prejudgment interest in the amount of $73,918.37 and postjudgment interest in the amount of $55,857.68, as well as reasonable attorney fees. The court found that ABKCO owed the Trust the requested prejudgment and postjudgment interest for failing to make the royalty payments since 2016 and for delaying the payment of withheld royalties following the court's September 9, 2021 order. The court also ordered that Andrea was entitled to reasonable attorney fees for pursuing this action against ABKCO.

{¶ 62} Andrea's counsel requested $445,516.81 in legal fees associated with enforcing the judgment; ABKCO opposed. On January 23, 2023, the court conducted a hearing, and in its February 9, 2023 order, determined that Andrea was entitled to attorney fees in the amount of $440,647.50, as well as costs totaling $6,779.31. In so reasoning, the probate court found:

---

[14] With this payment, the Reformed Trust received the withheld royalty payments, including the payment from August 2016, which was the basis for Andrea's breach-of-contract claim.

Indeed, as demonstrated again at the hearing, the entirety of this dispute (and thus all time devoted by [Andrea's counsel]) is a product of [ABKCO] falsely claiming to have incurred fees and improperly ceasing royalty payments in August 2016. *See*, 9.9.21 judgment entry at 84. [ABKCO] mislead [sic] this Court early on as to its involvement in this matter, attempted to "race" to the New York Court to deprive this Court of jurisdiction and then ignored this Court's Order to pay the Royalty fees due to the Trust and Ms. Cooke. The actions of [ABKCO] justify an award of attorney fees for all work incurred on behalf of Ms. Cooke in enforcing payment of royalty fees and obtaining royalty statements pursuant to Section 9 of the Royalty Agreement.

Following this order, both Andrea and ABKCO initiated appeals.[15]

## II. The Appeal

{¶ 63} The instant appeal pertains to Andrea's four assignments of error that challenge the trial court's decision (1) denying her summary judgment motion on her breach-of-contract and declaratory-judgment claims, (2) granting ABKCO summary judgment on its indemnification claim, and (3) awarding fees to ABKCO on its indemnification claim and pursuit thereof. ABKCO moved to dismiss Andrea's appeal, contending that her appeal is untimely and also moot because when the Reformed Trust accepted the royalty payment, which included a deduction for ABKCO's attorney fees, it voluntarily satisfied the judgment.

---

[15] ABKCO has filed its own appeal of the probate court's judgment awarding Andrea attorney fees and costs. *See McMahon v. Cooke*, 8th Dist. Cuyahoga No. 113190. In its appeal, ABKCO contends that the court erred in awarding Andrea attorney fees under Section 8 of the Royalty Agreement because no "judgment" was rendered in her favor to allow Andrea to invoke that provision. ABKCO also contends that even if the court's September 9, 2021 order constitutes a judgment, the court should not have awarded fees and expenses incurred prior to that September 9 order.

**III. Should Andrea's Appeal be Dismissed as Untimely or Moot?**

{¶ 64} ABKCO first contends that Andrea's appeal is untimely because she did not appeal the trial court's September 9, 2021 judgment that awarded ABKCO attorney fees as indemnification and ordered ABKCO to release the royalty payments withheld, minus the amount of ABKCO's indemnification fees, until March 10, 2023. We disagree.

{¶ 65} The probate court did not issue a final appealable order until September 5, 2023, after this court dismissed the parties' initial appeals for lack of a final appealable order due to "unresolved" claims by Andrea against ABKCO. *See McMahnon v. Cooke*, 8th Dist. Cuyahoga Nos. 112498 and 112502, motion Nos. 567330 and 567896 (Aug. 30, 2023), respectively ("[Andrea's] dismissals of four of her six claims against [ABKCO] without prejudice did not create a final, appealable order."). Accordingly, Andrea's refiled notice of appeal from the September 5, 2023 order, which caused all interlocutory orders to become final, is timely. *See Heaton v. Ford Motor Co.*, 2017-Ohio-7479, 96 N.E.3d 1191, ¶ 20 (8th Dist.) (when a final judgment has been entered terminating an entire case, all prior interlocutory orders will merge into the final judgment and be appealable at that time).

{¶ 66} ABKCO next contends that Andrea's appeal is moot because she did not obtain a stay prior to ABKCO satisfying the judgment by paying the withheld royalties that included a reduction of ABKCO's attorney fees awarded under the indemnity provision of the Royalty Agreement.

{¶ 67} Appellate courts cannot review questions that do not involve live controversies. *Cleveland v. Spears*, 8th Dist. Cuyahoga No. 107841, 2019-Ohio-3041, ¶ 7. The general "well-established principle of law" is that a voluntary "satisfaction of judgment renders an appeal from that judgment moot." *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990). Absent fraud, a reviewing court should dismiss a timely appeal if the final judgment is voluntarily paid and satisfied because such payment puts an end to the controversy and takes away from the defendant the right to appeal or prosecute error. *Id.*, citing *Rauch v. Noble*, 169 Ohio St. 314, 316, 159 N.E.2d 451 (1959), and *Lynch v. Bd. of Edn.*, 116 Ohio St. 361, 156 N.E. 188 (1927), paragraph three of the syllabus. "Once the rights and obligations of the parties have been extinguished through satisfaction of the judgment, a judgment on appeal cannot have any practical effect upon the issues raised by the pleadings." *Akron Dev. Fund I, Ltd. v. Advanced Coatings Internatl., Inc.*, 9th Dist. Summit No. 25375, 2011-Ohio-3277, ¶ 21.

{¶ 68} This court has held that failure to seek a stay of an execution of judgment renders the payment of that judgment "voluntary." *See, e.g., Cleveland v. Embassy Realty Invests., Inc.*, 8th Dist. Cuyahoga No. 105091, 2018-Ohio-4335, ¶ 23. A party may avoid a voluntary satisfaction of judgment by moving to stay execution of the judgment and by posting a supersedeas bond in an amount deemed by the trial court to be adequate to secure the judgment. *See* R.C. 2505.09; Civ.R. 62; App.R. 7. A stay of execution of judgment prevents both the trial court and the nonappealing party from enforcing the judgment. *See, e.g., O'Donnell v. Northeast*

*Ohio Neighborhood Health Servs.*, 8th Dist. Cuyahoga No. 108541, 2020-Ohio-1609, ¶ 41. But if the appealing party fails to obtain a stay and the judgment is satisfied, the appeal becomes moot and must be dismissed. *Id.*, *see also Capital Communications v. GBS Corp.*, 10th Dist. Franklin No. 10AP-08, 2010-Ohio-5964, ¶ 9-15 (appeal moot when appellant failed to seek a stay to prevent the distribution of escrowed funds that satisfied judgment).

{¶ 69} Andrea recognizes the general rule on mootness but contends that her appeal is not moot because ABKCO paid and the Reformed Trust accepted that to which it was entitled — the undisputed withheld royalty payments since 2016. She contends that the payment and acceptance of the royalty payment falls under the well-settled exception to the general rule that acceptance of payments not in dispute do not subject disputed payments to the mootness doctrine.

{¶ 70} In *Beals v. Lewis*, 43 Ohio St. 220, 222-223, 1 N.E. 641 (1885), the Ohio Supreme Court first recognized an exception to the mootness doctrine where a plaintiff sought to recover a balance due on a mortgage. The defendant acknowledged the amount due on the mortgage but refused to pay the amount of allegedly usurious interest. The trial court awarded judgment on the amount due as alleged by the defendant. Prior to the perfection of his appeal, plaintiff received from the defendant the full amount of the judgment. Since the amount due on the mortgage was never in controversy, but only the amount of interest was disputed, the *Beals* Court allowed the plaintiff to appeal the disallowance of interest despite satisfaction of the mortgage-balance judgment. *See also Law v. Law*, 64 Ohio St.

369, 376, 60 N.E. 560 (1901), *overruled and superseded by statute on other grounds.*

{¶ 71} Subsequently, in *Staunton v. Home Bldg. & Savs. Co.*, 140 Ohio St. 121, 42 N.E.2d 659 (1942), the Ohio Supreme Court approved and followed *Beals*, but included the requirement that a party who accepts an amount less than requested must reserve the right to appeal the amount disputed. "Where a party to an action is given judgment including interest at a rate less than that claimed, such party, by accepting the amount found due by the trial court *with a reservation of the right of appeal in respect of the balance of interest claimed*, does not thereby waive the right of appeal with respect to the question of the proper amount of interest due." (Emphasis added.) *Id.* at paragraph one of the syllabus.

{¶ 72} According to Andrea, her appeal falls under the exception because the Reformed Trust only accepted what it was entitled to in any event, i.e., the unpaid royalties, and thus, she could appeal without seeking a stay of the disputed amount — ABKCO's fees that reduced the royalty payment. In support, Andrea relies on *Betleyoun v. Indus. Comm. Of Ohio*, 31 Ohio App. 53, 166 N.E. 378 (9th Dist.1927); *Parma Hts. v. A.C. Paving & Contracting, Inc.*, 8th Dist. Cuyahoga No. 38075, 1978 Ohio App. LEXIS 8439 (Dec. 14, 1978); and *Koder v. Koder*, 6th Dist. Fulton No. F-05-033, 2006-Ohio-2235.

{¶ 73} The Ninth District in *Betleyoun* applied the *Beals* rationale in an administrative appeal of a workers' compensation claim. In *Betleyoun*, the defendant confessed judgment of $30 for actual damages and "for all over and above

the amount confessed herein" to a jury during a jury trial. Over objection, the trial court instructed the jury to award judgment in favor of the defendant based on the confession. The plaintiff moved for a new trial, but the court overruled the motion. Unbeknownst to plaintiff's counsel, the defendant sent plaintiff a check for $30, which the plaintiff cashed. When plaintiff then attempted to appeal the judgment, the defendant moved to dismiss the appeal as moot because the judgment had been satisfied. The Ninth District determined that the plaintiff waived his right to appeal the undisputed "confessed amount" by accepting and cashing the check, but did not lose his right to appeal the judgment as to the objected-to balance of his claim, i.e., the "over and above amounts." The court concluded:

> "When an amount found in favor of a litigant by a judgment or decree is due him in any event — when there is no controversy over his right to receive and retain it — so that the only question to be determined by the appellate tribunal is whether he is or is not entitled to a greater or an additional sum, the general rule does not apply, and his acceptance and retention of the amount awarded him by the judgment or decree he seeks to review does not preclude him from prosecuting the writ of error or appeal in order to obtain more."

*Id.* at 56-57, quoting 29 L. R. A. (N. S.), 30 (b). Applying this rationale, the court considered the appeal on its merits.

{¶ 74} Andrea also relies on *Koder*, 6th Dist. Fulton No. F-05-033, 2006-Ohio-2235, wherein the court applied *Betleyoun* and found that in a divorce action, wife's appeal was not moot even though the parties executed a "joint satisfaction of judgment" as to wife's division of marital property, including interest and the payment of attorney fees. In the proceedings, husband contended that his share in

a company was a nonmarital asset and that wife was only entitled to $26,667 — one-half of the appreciation of the value. Wife disputed this amount because she believed husband's interest was worth $160,000 and that she should thus receive $80,000 as her marital share. The court determined that wife was entitled to $26,667 as her marital share of the company. Husband paid this judgment and the parties executed a joint satisfaction of judgment. Wife appealed, contending that the court erred in its determination of husband's interest in the company. Husband moved to dismiss the appeal as moot because wife accepted and agreed that the judgment was satisfied. The court found that the exception to the general rule of mootness applied because the parties did not dispute that wife was entitled to at least the amount husband paid.

> Where a judgment creditor accepts payments from the judgment debtor of an amount awarded by the trial court and admitted to be due in any event, the general rule that satisfaction of judgment renders an appeal from that judgment moot does not apply to the judgment creditor.

*Koder* at ¶ 26. The court reasoned that the amount wife received was the least amount due to her "in any event" and the fact that she accepted this amount while her appeal was pending did not preclude her from appealing to recover additional amounts as to marital property.

{¶ 75} What is interesting to note, however, is that the *Koder* Court applied the general rule in prohibiting husband from appealing the same judgment because he voluntarily paid the judgment in lieu of asking for a stay of the execution of judgment pending his appeal. *Id.* at ¶ 28-29, citing *Lynch v. Bd. of Edn.*, 116 Ohio

St. 361, 156 N.E. 188 (1927). The court also applied the general rule as it pertained to both parties challenging the amount of attorney fees awarded and paid — "payment and acceptance of an amount in controversy precludes [both parties] from appealing." *Id*. at ¶ 27. *See also Lake Shore E.R. Co. v. Rohrbacher*, 44 Ohio App. 529, 530, 186 N.E. 507 (6th Dist.1932) ("It is well settled that if a plaintiff recover[s] a judgment for [a] lesser amount than he claims is his due, and thereafter receives payment of the amount of the judgment and costs, he cannot prosecute error.").[16]

{¶ 76} The situation before this court is unlike the cases Andrea cites and relies upon because in those cases the disputed amounts (ABKCO's attorney fees) were not ordered deducted from the purportedly undisputed amount (withheld royalties). This case is more akin to the case cited and relied upon by ABKCO — *Bryan v. Chytil*, 4th Dist. Ross Nos. 20CA3723, 20CA3725, 20CA3726, and 20CA3732, 2021-Ohio-4082, wherein the court found an appeal challenging an award of attorney fees moot when the appealing party did not seek a stay to prevent the trustees from paying those fees from appellant's share of the trust distributions.

---

[16] Andrea also relies on this court's decision in *Parma Hts. v. A.C. Paving & Contracting, Inc.*, 8th Dist. Cuyahoga No. 38075, 1978 Ohio App. LEXIS 8439 (Dec. 14, 1978), but we find that this case actually supports ABKCO's position that Andrea's appeal is moot. In that case, this court found that the exception to the mootness doctrine did not apply because the appellee never agreed that it owed appellant any amount of money. This court stated that appellee's subsequent application to confirm the arbitration award did not amount to appellee agreeing it owed appellant any of the money, rather it was merely recognizing that the court ordered appellee to pay appellant. This court therefore concluded, "[S]ince appellant has executed on the judgment * * * and received payment in full on that judgment, this appeal has become moot." *Id*. at 10. In this case, the Reformed Trust accepted payment that included the deduction for ABKCO's fees and thus satisfied the judgment against it regarding ABKCO's fees.

{¶ 77} The *Bryan* case involved a trust dispute concerning the administration, distribution, and termination of a trust, and resulted in the beneficiaries' attorneys seeking payment for fees rendered during the litigation. Relevant to this appeal, one of the beneficiaries, appellant, engaged with multiple attorneys throughout the litigation. One of his attorneys moved for attorney fees, which the appellant and another beneficiary disputed. Following a hearing, the court granted the attorney's motion on the condition that sufficient funds remained from the trust in the amount distributed to the appellant. The court subsequently changed its ruling and ordered the trustees of the trust to pay the attorney directly from the appellant's share of the trust funds. The trustees subsequently paid the fees out of appellant's share of the trust distribution. After all final disbursements were made and the case was resolved, appellant appealed the trial court's decision awarding fees to his former attorney and authorizing the trustees to pay those fees from appellant's share of the trust distribution.

{¶ 78} The Fourth District found that appellant's appeal was moot because he did not seek a stay of the court's ruling to prevent the payment of those fees from his share of the trust distribution. *Id*. at ¶ 192. The court rejected appellant's contention that the appeal was not moot because he did not "voluntarily" pay this judgment. The court, relying on case law regarding payment of judgments by funds held in escrow, stated that "'determinations of voluntariness do not turn on who satisfies the judgment.'" *Id*. at ¶ 188, quoting *Capitol Communications, Inc. v. GBS Corp.*, 10th Dist. Franklin No. 10AP-08, 2010-Ohio-5964, ¶ 9 (finding that the

mootness doctrine applied even when the appealing party did not voluntarily satisfy the judgment because the appealing party did not seek a stay preventing the trust to distribute the court-ordered funds); *see also Marotta Bldg. v. Leskinski*, 11th Dist. Geauga No. 2004-G-2562, 2005-Ohio-558, ¶ 19; *Villas at the Pointe of Settlers Walk Condominium Assn., Inc. v. Coffman Dev. Co., Inc.*, 12th Dist. Warren No. CA2009-12-165, 2010-Ohio-2822.

{¶ 79} The court stated that, "[e]ven though [appellant] did not directly pay the funds to [his former attorney], the funds were distributed from his share of the trust, and [appellant] did not seek a stay of the court's ruling to prevent the distribution from his share of the trust." *Bryan*, 4th Dist. Ross Nos. 20CA3723, 20CA3725, 20CA3726, and 20CA3732, 2021-Ohio-4082, at ¶ 192. Therefore, the court agreed that the payment of the attorney fees without a stay constituted a voluntary satisfaction the court's decision that granted appellant's former attorney a judgment for fees. *Id.*

{¶ 80} In this case, much like in *Bryan*, the probate court ordered ABKCO's fees deducted from the royalty payments it was withholding from the Reformed Trust and ordered ABKCO to deposit the balance of those funds into the Reformed Trust. Moreover, much like in *Koder*, by each party essentially accepting a reduced amount of what they were actually seeking (ABKCO initially sought over $400,000 in fees and Andrea requested the deposit of all withheld royalty payments since 2016), both parties would arguably be precluded from pursuing any error by the probate court in its September 9, 2021 order. If Andrea wanted to contest the court's

determination of ABKCO's fees or that the court was without authority to order the payment of such funds from the withheld royalty payments, she was required to seek a stay of that portion of the judgment prior to the execution of that judgment.[17] She did not do so, nor did she seek an immediate appeal from that judgment.

{¶ 81} Following the trial court's November 20, 2019 judgment entry, Andrea attempted to appeal the trial court's decision denying her motion for summary judgment and granting ABKCO summary judgment on its indemnification claim. This court dismissed Andrea's appeal for lack of a final appealable order because the probate court had not determined ABKCO's fee award. Following the trial court's September 9, 2021 judgment entry granting ABKCO a quarter of its requested fees and rendering a "final order," ABKCO appealed the probate court's judgment; Andrea did not refile her notice of appeal.[18]

{¶ 82} Rather, 60 days after the probate court's judgment, Andrea moved the probate court to hold ABKCO in contempt for failing to pay the royalties. In her motion and reply, Andrea specifically requested that the probate court hold ABKCO in contempt for failing to pay the royalties minus the amount the court had awarded to ABKCO — "Subtracting the court's award of $111,182.25, the balance to be paid to

---

[17] We recognize that the probate court's order of the reduction in fees from the withheld royalty payments was an attempt to resolve the long-standing dispute between the parties on this issue, but its order was also in accordance with Section 9 of the Royalty Agreement that required the Reformed Trust to "reimburse ABKCO, on demand, for any payments made by ABKCO."

[18] But for the subsequent order from this court in 2023, this order would have been a final appealable order.

the [Reformed] Trust is now $263,957.26." Nowhere in her motions did Andrea, now acting on behalf of the Reformed Trust, contend that (1) she was disputing ABKCO's indemnity fee award and thus not waiving any right to challenge the award, (2) she intended to appeal the indemnity award and thus was seeking a stay of the amount deducted for those fees, or (3) ABKCO was wrongfully withholding additional money owed to the Reformed Trust, i.e., the $111,182.25 payable to ABKCO. Her actions did not display "a reservation of the right of appeal in respect of the balance claimed" as required under the Ohio Supreme Court's decision in *Staunton*, 140 Ohio St. 121, 42 N.E.2d 659, at paragraph one of the syllabus. Accordingly, we find that the exception to the general rule of the mootness doctrine does not apply.

{¶ 83} Based on the foregoing, we find that Andrea's appeal is moot because the Reformed Trust accepted the payment of withheld royalties and did not seek a stay of the probate court's judgment that awarded ABKCO attorney fees pursuant to the indemnity provision under the Royalty Agreement, and, in fact, sought to enforce the judgment without a reservation of her right to appeal.

{¶ 84} Dismissed.

It is ordered that appellee, ABKCO Music, Inc. recover from appellant, Andrea M. Cooke, costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR